AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| Ellen Lee Zhou and Asian American Freedom Political Action Committee | ) ) ) ) | |
| *Plaintiff(s)* | ) ) | |
| v. | ) | Civil Action No. |
| Clear Channel Media, Inc., OutFront Media, London Breed, and DOES 1 through 99 | ) ) ) | |
| *Defendant(s)* | ) ) ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Clear Channel Media, Inc.
OutFront Media
London Breed

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  _____11/04/2019_____          _____
                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

JS-CAND 44 (Rev. 07/19)

# CIVIL COVER SHEET

The JS-CAND 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved in its original form by the Judicial Conference of the United States in September 1974, is required for the Clerk of Court to initiate the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Ellen Lee Zhou and Asian American Freedom Political Action Committee

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Steven C. Bailey, Esq. 932 D Street #2 Ramona, CA 92065

## DEFENDANTS
Clear Channel Media, Inc., OutFront Media, London Breed, and DOES 1 through 99.

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

1  U.S. Government Plaintiff

**X** 2  U.S. Government Defendant

3  Federal Question
*(U.S. Government Not a Party)*

4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | **X** 1 | 1 | Incorporated *or* Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated *and* Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC § 881 | 422 Appeal 28 USC § 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury – Product Liability | 690 Other | 423 Withdrawal 28 USC § 157 | 376 Qui Tam (31 USC § 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **LABOR** | **PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | 710 Fair Labor Standards Act | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment of Veteran's Benefits | 330 Federal Employers' Liability | 368 Asbestos Personal Injury Product Liability | 720 Labor/Management Relations | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | **PERSONAL PROPERTY** | 740 Railway Labor Act | 835 Patent—Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | 370 Other Fraud | 751 Family and Medical Leave Act | 840 Trademark | 460 Deportation |
| | 350 Motor Vehicle | 371 Truth in Lending | 790 Other Labor Litigation | **SOCIAL SECURITY** | 470 Racketeer Influenced & Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 355 Motor Vehicle Product Liability | 380 Other Personal Property Damage | 791 Employee Retirement Income Security Act | 861 HIA (1395ff) | 480 Consumer Credit |
| 160 Stockholders' Suits | 360 Other Personal Injury | 385 Property Damage Product Liability | **IMMIGRATION** | 862 Black Lung (923) | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 362 Personal Injury -Medical Malpractice | | 462 Naturalization Application | 863 DIWC/DIWW (405(g)) | 490 Cable/Sat TV |
| 195 Contract Product Liability | | | 465 Other Immigration Actions | 864 SSID Title XVI | 850 Securities/Commodities/ Exchange |
| 196 Franchise | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | 865 RSI (405(g)) | 890 Other Statutory Actions |
| **REAL PROPERTY** | **X** 440 Other Civil Rights | **HABEAS CORPUS** | | **FEDERAL TAX SUITS** | 891 Agricultural Acts |
| 210 Land Condemnation | 441 Voting | 463 Alien Detainee | | 870 Taxes (U.S. Plaintiff or Defendant) | 893 Environmental Matters |
| 220 Foreclosure | 442 Employment | 510 Motions to Vacate Sentence | | 871 IRS—Third Party 26 USC § 7609 | 895 Freedom of Information Act |
| 230 Rent Lease & Ejectment | 443 Housing/ Accommodations | 530 General | | | 896 Arbitration |
| 240 Torts to Land | 445 Amer. w/Disabilities– Employment | 535 Death Penalty | | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 245 Tort Product Liability | 446 Amer. w/Disabilities–Other | **OTHER** | | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 448 Education | 540 Mandamus & Other | | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee— Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

**X** 1 Original Proceeding

2 Removed from State Court

3 Remanded from Appellate Court

4 Reinstated or Reopened

5 Transferred from Another District *(specify)*

6 Multidistrict Litigation–Transfer

8 Multidistrict Litigation–Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983
Brief description of cause:
Violation of Civil Rights

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, Fed. R. Civ. P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   **X** Yes    No

## VIII. RELATED CASE(S), IF ANY *(See instructions)*:
JUDGE

DOCKET NUMBER

## IX. DIVISIONAL ASSIGNMENT (Civil Local Rule 3-2)
*(Place an "X" in One Box Only)*     **X** SAN FRANCISCO/OAKLAND     SAN JOSE     EUREKA-MCKINLEYVILLE

DATE   11/04/2019            SIGNATURE OF ATTORNEY OF RECORD    Steven C. Baily, Esq.

Steven C. Bailey, Esq. (SB# 146382)
California Constitutional Rights Foundation
932 D Street #2
Ramona, CA 92065
530-409-0027
800-593-4440
Email: judgestevenc.bailey@gmail.com

Attorneys for Plaintiffs Ellen Lee Zhou and
Asian America Freedom Political Action
Committee

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ellen Lee Zhou, an Individual and Asian American Freedom Political Action Committee. | CASE NO. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELEIF** |
| | **CIVIL RIGHTS COMPLAINT:** |
| v. | **FIRST AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES;** |
| Clear Channel Media, Inc., OutFront Media, and London Breed, an Individual, and DOES 1 through 99, inclusive, | **42 U.S.C. 1983; VIOLATION OF THE CALIFORNIA CONSTITUTION; BREACH OF CONTRACT, AND TORTIOUS INTERFERENCE WITH CONTRACTS:** |
| Defendants. | **JURY TRIAL DEMANDED** |

## INTRODUCTION AND PREFATORY STATEMENT

1.  Plaintiffs Ellen Lee Zhou, ["Zhou"], an Individual, and Asian American Freedom

Political Action Committee ["Committee"] [Collectively "Plaintiffs"] bring this lawsuit to

bar Defendants Clear Channel Media, Inc. ["Channel"], OutFront Media ["OutFront"], and

London Breed ["Breed"] [Collectively, "Defendants"] from unlawfully censoring its 1st

Amendment rights and its rights to politically campaign through the use of non-

commercial political billboard advertisement, based on Zhou's political identity and viewpoint as an opposing candidate in the San Francisco City Mayoral election.

2.   Committee is unaffiliated to Zhou and is an independent expenditure committee bringing a political message to the voters of the City and County of San Francisco.

3.   Zhou's and Committee's 1st Amendment rights have been censored by Defendants in violation of the 1st Amendment to the Constitution of the United States, by censoring the non-commercial political advertisements of Plaintiffs, by posting announcements on top of the Plaintiff's billboard statements, denigrating the plaintiffs and their views, and by inappropriately removing Plaintiffs' non-commercial political advertisement without Plaintiffs' permission or prior knowledge of said removal.

4.   Plaintiffs are informed and believe and thereon allege that Breed and elicited assistance from Channel, OutFront, and Does 50 – 99 to accomplish the removal of all of Plaintiffs' non-commercial political billboard advertisements in tortious interference with the consummated contracts in place between Zhou and Channel and OutFront ("Media").

5.   Media operates among the large forum of billboard advertisement corporations for outdoor commercial, non-commercial, and political advertisement. This outdoor advertisement media outlet allows the general public the opportunity to read, express, and exchange speech freely in San Francisco, in California, and across the United States. The number of entities who currently use this service exceeds 1,000 companies. More than 20,000 members of the general public of the City of San Francisco visit and/or drive by the billboard platform locations daily where Plaintiffs' contracted  billboards are located, where they may review and be informed freely of its messages.

6.   Such messages were thoroughly vetted by the legal department of Media, prior to the installation of each of Zhou's and Committee's contracted billboard locations in San

Francisco, California.

7.   In doing so, Media becomes a forum intended to protect free speech 1st Amendment rights, where Plaintiffs and the general public may speak, express, and exchange their opinions and political views as depicted in the political advertisement, approved in advance and installed by Media.

8.   Phillip Monares ("Monares") sale representative for Media, contacted Zhou via electronic mail on September 26, 2019, at 1:58 p.m., transmitting the following statement, *"GOOD NEWS! We can move forward."*

9.   Plaintiffs have been informed and believe and thereon allege that Breed used her influence as the Mayor of San Francisco and as a leader in the Democratic Party, inappropriately, as a political gag mechanism to silence her mayoral opponent, Zhou. Breed did such acts not because she identified content that violates the rights of others in an inappropriate manner in Zhou's contracted advertisement, but because Zhou is opposing Breed, the Mayor, and the head of the administration in the City of San Francisco, for re-election, Plaintiffs are raising issues that Breed and the City of San Francisco administration finds uncomfortable and unexplainable. This is a 1st Amendment violation plain and simple: censorship based entirely on the identity and political viewpoint of Zhou or Committee, and not on the content of the non-commercial political advertisement.

10. Certain of the defendants engaged in tortious interference with Zhou's and Committee's contracts with Media,  who exhibited willingness, without prior notice to Zhou or Committee, to take down Plaintiffs' non-commercial political advertisement from the contracted billboards. Media did so without cause, despite the fact that Media's legal department had approved all content and artwork of Zhou's and Committee's legally contracted advertisements in writing prior to installing the advertisements on the

contracted billboards. This constitutes tortious interference with the Plaintiff's contract by Breed and Does 50-99, a material breach of contract by Media, and it violates Plaintiffs' fundamental free speech rights under Article 1 Section 2(a) of the California Constitution and the 1st Amendment to the United States Constitution. All such acts of Defendants alleged herein in this regard are misleading, a display of unfair business practices, breaches the warranty of good faith and fair dealing implied in the Media's contract with Plaintiffs. This includes, but is not limited to, Media's guidelines and policies for non-commercial political use for billboard content.

11. Furthermore, Media provided Plaintiffs with no advance notice or reason for the removal of its purchased non-commercial political advertisement. Their decision, and failure, to do so constitute facially invalid restrictions of speech that lack objective criteria, are misleading, and/or discriminatory, and, as a result allow Breed to censor or restrict political speech at her whim, based purely on her subject beliefs, political animus, and unfettered and unbridled discretion, in violation of both federal and state law.

12. While Media may lawfully regulate or restrain speech in certain circumstances to the extent that such restrictions are reasonable and objective in time and manner, and place restrictions that comport with federal and California legal standards for the regulation of speech, it may not do so at will without any restrictions or in an arbitrary or capricious manner that provides them with unbridled discretion to discriminate against a speaker based on his/her identity or political view point. Nor can the Media, rely on criteria, including collusion with others, such as a political candidate in opposition of its client, i.e., Zhou, or Community Guidelines that are so vague, broad, or undefined that they may serve or be used as a pretext to censor or discriminate against the speakers of non-commercial political advertisement because of a bias or animus towards a political identity or

viewpoint.

13. Zhou is a political candidate for the office of Mayor in San Francisco, a candidate whose non-commercial political advertisements seek to provide news-based platforms to promote open and balanced discussions of historical and current issues from an alternative perspective in San Francisco.

14. Committee is an independent expenditure committee without affiliation with Zhou, that made expenditures for the purpose of discussing issues of community importance to the citizens and voters in the City and County of San Francisco.

15. There is absolutely nothing inappropriate about the content of the artwork that was contained in the non-commercial political billboard advertisement that should have been censored by Media. The billboard artwork and message of the Plaintiffs' non-commercial political billboards utilize comic strip animation formats to discuss current and historical issues in a light hearted manner.

16. Media failed to offer any reasonable or consistent explanation for why the content of these billboards is subject to restricted content filtering, and why it was torn down before the contract expired on November 5, 2019, which is Election Day.

17. Instead, Media have repeatedly torn down all non-commercial political billboard advertisement signs of Plaintiffs and cut off all communications with Plaintiffs.

18. This is telling because Plaintiffs paid Media to run these billboard ads, which ads were not erected until after the content was approved by the legal department of the Media. In short, Media created a purely subjective and unspecific criteria for determining what is and is not appropriate in order to justify censorship based, not on content, but on the viewpoint and perceived political identity of the speaker. Such a censorship regime cannot pass muster under the First Amendment and is discriminatory and unlawful under California

law. Among other things, it provides Breed, and Does 50-99, with unfettered and unbridled discretion to impose their own political views and values on speakers without any objective criteria for evaluating what is and what is not appropriate, and thereby censor speech based on animus towards the speaker's political view point rather than the appropriateness of the content of the billboards.

19. In summary, Defendants used of their unfettered power over the non-commercial political billboard advertisement to censor the thoughts and speech of Plaintiffs based solely on their political identity or viewpoint such action is legally indefensible and violates the California and United States Constitutions, unfair business practice laws, and Media's policies and terms of use.

## **PARTIES**

20.       Plaintiffs alleges and incorporates all preceding allegations as fully set forth above in all following paragraphs.

21.       Plaintiff Ellen Lee Zhou is a political candidate for Mayor of San Francisco, and a resident of the City of San Francisco, California.

22.       Plaintiff Asian American Freedom Political Committee is a political organization with its principal place of businesses in the State of California.

23.       Breed an individual, is the interim Mayor of San Francisco, California, and is seeking re-election.

24.       Channel is a for profit corporation incorporated under the laws of the State of New York, with its principal place of business in California, and regularly conducts business in the city and county of San Francisco.

25.       OutFront is a for profit corporation, incorporated under the laws of the State of New York, with its principal place of business in California, and regularly conducts

business in the city and county of San Francisco.

26.      Plaintiffs do not know the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Doe 1 through Doe 99, inclusive, and, therefore, sue said Defendants under fictional names. Plaintiffs alleges, upon information and belief, that each fictionally named Defendant is responsible in some manner for committing the acts upon which this action is based. Plaintiffs will amend this petition to show their true names and capacities if and when the same have been ascertained.

27.      Plaintiffs are informed and believe and thereon alleges that the Defendants, and each of them, were co-conspirators of their co-defendants, and each of them, and in doing the things alleged herein, were acting in furtherance of that conspiracy, with the knowledge of, and agreement to, both the objective and course of action, and that each of them wrongfully acted in furtherance of such agreement, resulting in damage to Plaintiffs. Plaintiffs, on further information and belief, allege that each of the Defendants aided and abetted their co-defendants in the commission of the wrongful acts alleged in this complaint.

## JURISDICTION & VENUE

28. Plaintiffs alleges and incorporates all preceding allegations as fully set forth above in all following paragraphs.

29. Pursuant to federal court statues: 28 USC 1391, 28 USC 1404, 28 USC 1406, and 28 USC 1631.

30. Pursuant to California Code of Civil procedure sections 526, 527, 1085 (alternatively section 1094.5), and 1087; and Government Code sections 54960, 54960.1, and 54960.2, this Court has jurisdiction to this issue.

31. Venue is proper in this Court because the cause of action alleged in this Complaint

arose in San Francisco County.

32. This Court has jurisdiction over this matter because Defendants transacted business and committed the acts complained of herein within San Francisco County, during the times referenced herein, and the contract at issue was performed in California, including in San Francisco County.

33. This is a civil action arising under the First Amendment of the Constitution of the United States, as subsequently set forth, and this court has jurisdiction of this action by reason of 28 U.S.C. §§ 1331, 1338, 1343, and 42 U.S.C. §§ 1983, 1985, and 1988.  The Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

34. Plaintiffs have performed any and all conditions precedent to filing this action and have exhausted any and all available administrative remedies to the extent required by law.

35. By engaging in the conduct alleged above, Defendant(s) availed themselves of the privileges of this Court.

## FACTUAL ALLEGATIONS

36. Plaintiffs alleges and incorporates by reference all preceding allegations as fully set forth above in all following paragraphs.

37. Zhou entered into a contract with OutFront on September 30, 2019. [See "Exhibit A," attached hereto and made a part hereof.].

38. On September 30, 2019, Zhou paid OutFront with financial assistance from Committee, $4,040.02 with check number 1035 for use of four billboards. [See "Exhibit B and C," attached hereto and made a part hereof.]

39. The contract time frame was from October 7, 2019, to November 3, 2019, with a verbal promise from Phillip Monares ["Monares"], a sales associate of OutFront that the billboards would be up until after the election date of November 5, 2019 and removed on

8

November 7, 2019.

*40.* Monares contacted Plaintiffs via electronic E-Mail confirming that their billboard content had been vetted by the legal department of Defendant. The electronic E-Mail was dated September 26, 2019 at 1:58 p.m. transmitting the following statement, *"GOOD NEWS! We can move forward."*

41. On Friday, October 25, 2019, Zhou became aware that three of four billboards that she contracted to use from, OutFront had been removed without her consent by OutFront.

42. Zhou contacted Monares and asked him for the date on which the billboards were put up. Monares gave Zhou the date of October 15, 2019, but also stated in another communication with Zhou that four billboards were up on October 11, 2019. Zhou expressed concerns regarding the date discrepancies, and Monares advised that installations of the billboard were late due to OutFront's limited manpower to finish the artwork on time.

43. On Monday, October 28, 2019, Zhou emailed OutFront and inquired as to when 3 of her contracted billboards were removed, who removed them, and why.

44. Zhou received a phone call on Tuesday, October 22, 2019 at 12 noon, that informed her that one contracted billboard at One Dore Ally was missing. Zhou reported this information to Monares. Monares informed Zhou that he did not know what had happened, that he would call his office to find out, and that he would then get back to her.

45. A day later, Zhou discovered that three of her contracted billboards were missing, and that only the Polk and California Street billboard was still up.

46. Zhou called Monares on Monday, October 21, 2019, to add two more billboards, exactly the same as the billboard on One Dore Ally. Monares informed Zhou that it was okay, that he would work on it, and required Zhou to sign another payment contract for

two more billboards costing approximately $500.00.

47. Zhou invited Monares to come to her office to pick up the check. He did not go to Zhou's office and he has not responded to her subsequent communications.

### FIRST CAUSE OF ACTION
### (Violation of 1ST Amendment )

48. Plaintiffs hereby realleges and incorporates by reference all preceding paragraphs in their entirety in the following paragraphs.

49. Zhou and Committee bring this lawsuit to stop Channel, OutFront, and Breed from unlawfully censoring their 1st Amendment rights and their rights to politically campaign through the use of non-commercial political billboard advertisement, based on Zhou's political identity and viewpoint as Breed's opposing candidate in the San Francisco Mayoral election.

50. Zhou's rights have been censored by Defendants in violation of the 1st Amendment of the Constitution of the United States, by continuing to censor the non-commercial political advertisements of Plaintiffs, by posting announcements on top of the Plaintiffs' billboard statements, denigrating the plaintiffs and their views, and by inappropriately removing Plaintiffs non-commercial political advertisement without Plaintiffs' permission or prior knowledge of said removal of billboards.

51. Plaintiffs are informed and believe and thereon allege that Breed elicited help from Channel, OutFront, and Does 1 – 99, to accomplish the removal of all of Plaintiffs' non-commercial political billboard advertisements in a tortious display of interference with the consummated contracts in place between Zhou and Media.

52. Media operates among the largest forum of billboard advertisement corporations for outdoor commercial, non-commercial, and political advertisement. This outdoor

Violation of 1st Amendment, Civil Rights Complaint: Tortious Interference with Contract and Breach of Contract

advertisement media outlet allows the general public the opportunity to read, express, and exchange speech freely in San Francisco, in California, and across the United States. The current number of entities who currently use this service exceeds 1,000 companies. More than 20,000 members of the general public of the City of San Francisco visits and/or drive by the billboard platform locations daily where Plaintiffs billboard are located, where they may review and be informed freely of its messages.

53. Such messages have been thoroughly vetted by the legal department of Media, prior to the installation of each of Plaintiff's contracted billboard locations in San Francisco, California.

54. In doing so, Media, becomes a forum intended to protect the free speech, 1st Amendments rights, where the Plaintiffs and the general public may speak, express, and exchanges their opinions and political views as depicted in the political advertisement herein approved in advance and installed by the Defendants, Media. [See Exhibit D].

55. Plaintiffs have been informed and believe and thereon allege that Breed used her influence as the sitting interim Mayor of San Francisco and as a leader of the Democratic Party, inappropriately, as a political gag mechanism, to silence her mayoral opponent, Zhou. Breed did such acts not because Zhou's content violates the rights of others in an inappropriate manner in Plaintiff's advertisement, but because Plaintiffs identify with an opposing party. This is a 1st Amendment violation plain and simple: censorship based entirely on the identity and political viewpoint of the Plaintiffs and not on the content of the non-commercial political advertisement.

56. Defendants tortuously interfered with the Plaintiffs' contract with Media, who exhibited willingness, without notice to Plaintiffs, to align with Breed and to tear down the Plaintiffs' noncommercial political advertisement from the contracted billboards.

Violation of 1st Amendment, Civil Rights Complaint: Tortious Interference with Contract and Breach of Contract

Defendants did so without cause, despite the fact that Media's legal department had approved all content and artwork of Plaintiffs' advertisements in writing prior to installing the advertisements on the billboards. This constitutes tortious interference with the Plaintiff's contract by Breed and does 1-99, a material breach of contract by Media, and such acts violate Plaintiffs fundamental First Amendment rights under both the California and United States Constitutions. All such acts stated herein in this regard are misleading, a display of unfair business practice, and breaches the warranty of good faith, and fair dealing implied in Media's performance contract with Plaintiffs. This includes, but is not limited to, Media's guidelines and policies for non-commercial political use for billboard content.

57. Furthermore, Media, provided Plaintiffs with no advance notice or reason for the removal of its purchased non-commercial political advertisement. Their decision, and failure, to do so constitute facially invalid restrictions of speech that lack objective criteria, are misleading, and/or discriminatory, and, as a result, allow Breed to censor or restrict political speech at her whim, based purely on their subject beliefs, political animus, and unfettered and unbridled discretion in violation of federal and state law.

58. While Media may lawfully regulate or restrain speech in certain circumstances to the extent that such restrictions constitute reasonable and objective time, manner, and place restrictions that comport with federal and California legal standards for the regulation of speech, it may not do so at will without any restrictions, or in an arbitrary or capricious manner that provides them with unbridle discretion to discriminate against a speaker based on his/her identity or political view point. Nor can Media rely on criteria, such as a political candidate in opposition of its client, i.e. Zhou, or Community Guidelines that are so vague, broad, or undefined that they may serve or be used as a pretext to censor or

discriminate against the speakers of the noncommercial political advertisement because of a bias or animus towards a political identity or viewpoint.

59. Zhour is a political candidate for the office of Mayor in San Francisco, a candidate whose non-commercial political advertisement seeks to provide news-based platforms to promote open and balanced discussions of historical and current issues from a certain perspective in San Francisco. There is absolutely nothing inappropriate about the content of the artwork that was contained in the non-commercial political billboard advertisement that should have been censored by Media. The billboard artwork and message of Plaintiffs' non-commercial political billboards utilize comic strip animation formats to discuss current and historical issues in a light hearted manner.

60. Media failed to offer any reasonable or consistent explanation for why the content of these billboards is subject to restricted content filtering and subsequently torn down before the contract dated beyond November 5, 2019, i.e. Election Day.

61. Instead, Media have repeatedly torn down all non-commercial political billboard advertisement signs of Plaintiffs and cut off all communications with Plaintiffs.

62. This is telling because the Plaintiffs paid to run these billboard ads, which were not erected until after the content was approved by the legal department of Media, before releasing the artwork for production and installation in the City of San Francisco. In short, Media created a purely subjective and unspecific criteria for determining what is and what is not appropriate in order to justify censorship based not on content, but on the viewpoint and perceived political identify of the speaker. Such a censorship regime cannot pass muster under the First Amendment and is discriminatory and unlawful under California law. Among other things, it provides Breed, and Does 1-99, with unfettered and unbridled discretion to impose their own political views and values on speakers without any

objective criteria for evaluating what is and is not appropriate, and thereby censors speech based on animus towards the speaker's political view point rather than the appropriateness of the content of the billboards.

63. Defendants' use of their unfettered power over the non-commercial political billboard advertisement to censor the thoughts and speech of Plaintiffs based solely on their political identity or viewpoint is legally indefensible and violates the California and United States Constitutions, unfair business practice laws, and Media's policies and terms of use.

## SECOND CAUSE OF ACTION
### Right to be Secure From Unreasonable Seizures 42 U.S.C 1983 – Fourth Amendment; Art. 1, §13, California Constitution

64. Plaintiffs alleges and incorporates all preceding allegations by reference as fully set forth above in all following paragraphs.

65. Defendants, and their employees and agents, violated Plaintiffs' Civil Rights to be free from unreasonable seizure of their property by confiscating and then destroying Plaintiffs' property without a warrant.

66. These unlawful actions were done with the specific intent to deprive Plaintiffs of their constitutional rights to be secure in their property.

67.  Plaintiffs are informed and believe that the acts of the Defendants and their employees and agents were intentional in failing to protect and preserve Plaintiffs' property, and that, at minimum, Defendants were deliberately indifferent to the likely consequence that the property would be seized and destroyed unlawfully, based on the past comments in public newspaper and their on camera television media news reports.

68. As a direct and proximate consequence of these unlawful acts, Plaintiffs have suffered and continue to suffer loss of their personal property and are entitled to compensatory damages for their property personal injury.

69. Plaintiffs have been informed and believe and thereon allege that Breed used her influence as the sitting interim Mayor of San Francisco, California and as a leader in the Democratic Party, along with Does 59-99, inappropriately as a political gag mechanism to silence her mayoral opponent, Zhou. Breed did such acts not because Defendants identified content that violates the rights of others in an inappropriate manner in Plaintiff's political advertisement, but because Plaintiffs identify with an opposing party. This is suppression of speech, a Civil Rights violation: censorship based entirely on the identity and political viewpoint of the Plaintiffs and not on the content of the non-commercial political advertisement.

70. Breed, the interim Mayor, seeking re-election of San Francisco, California, and Does 59 – 99, deprived the Zhou of a right secured by the U.S. Constitution and while acting under the color of state law when Breed, and Does 59-99, conspired to and suppressed the speech of Zhou.

71. On Monday, October 21, 2019 at 10 a.m., Breed, and Does 59-99, who share Breed's political views and affiliation, conspired with, and/or coerced Media to join in with each and every one of them to interfere with the business contract of Zhou and Media, thereby suppressing the speech of Zhou, violating Plaintiffs' First Amendment and Civil Rights.

72. Even as private citizens, Breed becomes a "State Actor", and can be held liable for violating Section 1983, due to the acts complained of herein, which amounts to Breed's decision by donning the mantle of government authority, thereby becoming a state actor, and, by way of the three alternative tests that determine whether a private citizen might be considered state actor for the purposes of Section 1983, as follows: 1) The Public Function test; 2) The State Compulsion test; or 3) The Nexus/Joint Action test. See Focus on the Family, 344 F.3d at 1277.

a. In so far as the public function test, Breed was performing a function "traditionally the exclusive prerogative of the state" when they ordered Channel and OutFront to take down Plaintiffs' non-commercial political contracted billboards in acts of conspiring to suppress the speech of Zhou and Committee beginning on October 21, 2019.

b. In so far as the State Compulsion test: Breed, the state, and Does 59-99 have "coerced" and "significantly encouraged" Media to engage in the complained-of conduct herein.

c. In so far as the Nexus/Joint action test, the state, i.e., Breed, has so far insinuated herself into a position of interdependence with Media, that she was a joint participant in the enterprise. The court may thereby examine whether the government and the defendant are "intertwined in a symbiotic relationship," as well as whether the relationship involves the specific conduct of which Plaintiffs complain.

**THIRD CAUSE OF ACTION**
**Breach of Contract**

73. Plaintiffs alleges and incorporates all preceding allegations as fully set forth by reference above in all following paragraphs.

74. Zhou entered into a contracted with OutFront on September 30, 2019. [See Exhibit A].

75. On September 30, 2019, Zhou paid OutFront $4,040.02 with check number 1035 for the following four billboards.

a. Posters/Unit#1342-3 10'5"x22'8" 16,089 1 10/07/19-11/03/19

b. 4W $925.00 7Th200ftN/OGearyE/SF/N SFBay Area-Posters Posters/Unit#1395-2 10'5"x22'8" 49,720

c. 1 10/07/19-11/03/19 1.00 4W $825.00 Polk& CaliforniaSE/S%F/NW SFBay Area-Posters Posters/Unit#2155-

d.   1 10'5"x22'8" 53,482 1 10/07/19-11/03/19 1.00 4W $925.00

SanBruno175ftS/OSillimanW/S F/S SFBay Area-Posters Posters/Unit#2969-

e.   1 10'5"x22'8" 75,070 1 10/07/19-11/03/19 1.00 4W $925.00 Howard

76. The contract time frame agreement between Plaintiffs and Media was from October 7, 2019, to November 3, 2019, with a verbal promise from Monares that the billboards will be up until after the election date of November 5, 2019 and removed on November 7, 2019.

77. Zhou's billboards were removed by OutFront on October 21, 2019, immediately after elected officials held a press conference in front of one of Zhou's contracted billboard, where they freely expressed their opposing views regarding the content of one of Zhou's contracted billboard. Zhou was never informed by OutFront about the removal of any of the contracted billboards.

**FOURTH CAUSE OF ACTION**
**Tortious Interference with Contract**

78. Plaintiffs hereby realleges and incorporates by reference all preceding allegations in all the following paragraphs.

79. The contract time frame agreement between Zhou and Media was from October 7, 2019, to November 3, 2019, with a verbal promise from Monares, an employee of OutFront, that the billboards will be up until after the election date of November 5, 2019 and removed on November 7, 2019. However, according to television media reports shown on television channels 2, 5, 7, Fox News, and Utube, and Media, Does 1 – 99, each one, and collectively, conspired with Breed to remove all of Plaintiff's contracted billboards before the contracted dated of removal.

80. On Monday, October 21, 2019 at 10 a.m., Breed, and Does 59-99 who share Breed's

political views and affiliation, conspired and coerced Media to join in with each and every one of them to interfere with business contract of Zhou and Media, thereby suppressing the speech of Plaintiffs, violating their First Amendment and Civil Rights.

81. OutFront, which owns the billboards that Zhou contracted for, stated that it took Zhou's billboard down early Tuesday morning and that it, *"reserves the right to remove advertising copy that is considered offensive to community standards"*, in a statement to the Chronicle Newspaper. In its statement to the Chronicle newspaper, OutFront failed to mention that its legal department had reviewed and approved the placement and content of Zhou's non-commercial political advertisement.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays for judgment as follows:

Ellen Lee Zhou and Asian American Freedom Political Action Committee prays for judgment against Defendants as follows:

1.  For costs of the lawsuit;

2.  For attorneys' fees as authorized by Government Code § 54960.5 and Code of Civil procedure § 1021.5; and as provided in 42 U.S.C. § 1988;

3.  For $1,000,000.00 damages according to proof;

4.  For a declaratory judgment that Defendants' policies, practices and conduct as alleged herein violate Plaintiffs' rights under the United States and California constitutions and the laws of California;

5.  For temporary restraining order, preliminary, and permanent injunction, enjoining and restraining Defendants from engaging in the policies, practices, and conduct complained of herein;

6.  For an order prohibiting Defendants from censoring political speech in the future,

1    7. For punitive damages against all defendants, and,

2    8. Such other relief as the Court deems just and proper.

3    Dated:    November 4, 2019

4

5                                              By: _____

6                                              Attorney Steven C. Bailey
                                               Attorney for Plaintiff Ellen Lee Zhou and
7                                              Asian American Freedom Political Action
                                               Committee

8

9

10                              **JURY DEMAND**

11        Plaintiffs hereby request a jury trial in this matter pursuant to Rule 38 of the Federal

12   Rules of Civil Procedure.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Violation of 1ˢᵗ Amendment, Civil Rights Complaint: Tortious Interference with Contract and Breach of Contract**

# EXHIBIT A

DocuSign Envelope ID: 9A01BAB2-C28B-46E3-A24A-FD87EEB68958

# OUTFRONT/ ADVERTISING NON-SPACE AGREEMENT

Contract #: 3001087
Date: 10/03/19
Page: 1 of 3

Ellen Zhou Lee Zhou for Mayor

"ADVERTISER/AGENCY" hereby contracts with OUTFRONT MEDIA (OUTFRONT) for the production, installation or services advertising display as described below upon the terms and conditions set forth in this contract. The artwork furnished to OUTFRONT Media requires the following special handling and/or embellishment features not included in normal execution of advertising space:

| Market/Media | Specifications | #Units | Copy Size | Total Sq. Ft. | Date(s) | No. of Periods | * | Period Cost T=Tax Value B=Barter Value | Period Total |
|---|---|---|---|---|---|---|---|---|---|
| SF Bay Area - Posters Production Costs | Eco Poster Production Posting/Install Date 10/07/19 | 4 | | | 10/07/19 | 1.00 | D | $340.00 | $340.00 |

|  |  |
|---|---|
| Total Net Amount: | $340.00 |
| Total Shipping Cost: | $0.00 |
| Total Sales Tax: | $0.00 |
| Net Agreement Total: | $340.00 |

Buying Agency

Advertiser        Ellen Zhou
Brand
Campaign
Ref. Space Contract #   2999588
Customer Ref #
Special Instructions

**Approval must be provided prior to completion of all special embellishment features.** This agreement is non-cancelable by advertising agency. This agreement consists of this page and the OUTFRONT Media terms and conditions incorporated herein, all of which advertiser/agency hereby acknowledges receiving and approving. Facsimile signatures shall have the same force and effect as original signatures. Agency and/or advertiser's signatory hereon represents and warrants that they are authorized to execute the same on behalf of and bind the advertiser and that the advertiser approves same.

| | |
|---|---|
| Sales A.E. | Philip Monares (J45) |
| Advertiser/Agency | [signature] Ellen Lee Zhou |
| | AUTHORIZED SIGNATURE |
| Approval | |
| | AUTHORIZED SIGN (PRINT NAME) |
| Print Name/Title | Ellen Lee Zhou |
| By | |
| | GENERAL MGR (PRINT NAME) |
| Date | 10/03/2019 | 4:46:20 PM EDT |
| Date | |
| Bill To | Ellen Zhou Lee Zhou for Mayor (Acct# 1132824) |
| Return To | OUTFRONTmedia |
| | 1695 Eastshore Hwy. |
| Billing Address | 2600 San Bruno Avenue |
| | Berkeley, CA 94710 |
| | San Francisco, CA 94134 |
| | 510-527-3350 |
| | 415-205-9132 |
| | Atm: Ellen Lee Zhou |

* Period Codes: M=Monthly; W=Weekly; 4W=4 Weeks; D=Daily; OT=One Time; TF=Till Forbid ** Barter

DocuSign Envelope ID: 18689 7BB-D1A4-44C8-AA1B-8774D1B3A90B

# OUTFRONT/

## ADVERTISER AGREEMENT - PRODUCTION INFORMATION ADDENDUM

DATE:  10/03/19

Advertiser Bill-To# 1132824
Ellen Zhou Lee Zhou for Mayor
2600 San Bruno Avenue
San Francisco, CA 94134
415-205-9132
Attn: Ellen Lee Zhou

CONTRACT NO.:  **2999588**

ADVERTISER:   Ellen Zhou

BRAND:

CAMPAIGN:

ACCOUNT EXECUTIVE:  Phillip Monares (J45)

PAGE 2 OF 4

*Copy must meet Production specifications and be received 10 working days prior to each advertising period.*
THIS AGREEMENT AND THE COPY TO BE DISPLAYED HEREUNDER IS SUBJECT TO THE APPROVAL OF OUTFRONT MEDIA'S
MARKET GENERAL MANAGER AND THE OWNER OF THE LOCATION AS APPLICABLE

| Market | Media Location(s) | Size | Copy Due Date | Shipping Quantity | Shipping Address | Service AE | Ext. Fab Per Sq Ft |
|---|---|---|---|---|---|---|---|
| SF Bay Area-Posters | Posters/Unit# 1342-3 7Th 200 ft N/O Geary E/S F'N | 10'5"x22'8" | 09/23/19 | 1 | OUTFRONT Media 1695 Eastshore Hwy Berkeley,CA 94710 510-527-3350 Attn Outdoor Operations | | |
| SF Bay Area-Posters | Posters/Unit# 1395-2 Polk & California SE/S% FNW | 10'5"x22'8" | 09/23/19 | 1 | OUTFRONT Media 1695 Eastshore Hwy Berkeley,CA 94710 510-527-3350 Attn Outdoor Operations | | |
| SF Bay Area-Posters | Posters/Unit# 2155-1 San Bruno 175 ft S/O Silliman W/S F/S | 10'5"x22'8" | 09/23/19 | 1 | OUTFRONT Media 1695 Eastshore Hwy Berkeley,CA 94710 510-527-3350 Attn Outdoor Operations | | |
| SF Bay Area-Posters | Posters/Unit# 2969-1 Howard St 194 ft E/O 10Th St/S/S F/NE | 10'5"x22'8" | 09/23/19 | 1 | OUTFRONT Media 1695 Eastshore Hwy Berkeley,CA 94710 510-527-3350 Attn Outdoor Operations | | |

## OUTFRONT MEDIA TERMS AND CONDITIONS OF ADVERTISING SERVICE

**1.** As used in this herein, Company shall mean OUTFRONT Media and Advertiser shall mean and be deemed to include, in addition to Advertiser, any advertising agency or any other agent or licensee of Advertiser (collectively "Advertiser").

**2.** At least ten (10) working days before the estimated start date, Advertiser, at its sole expense, shall furnish and deliver to Company or to service points designated by Company, sufficient supply of advertising copy, in form and type specified by Company along with written notice to Company setting forth required posting instructions. If copy is not so received, a loss of service may occur or additional costs may be charged by Company although commercially reasonable efforts will be used to post copy as promptly as practicable after receipt from Advertiser. If Advertiser requests expedited installation within five working days of receipt of late received copy, a fee of not less than $650 per location will be payable. In any event, if copy is not received in a timely manner, Company may use subject locations in any manner, without limiting Advertiser's liability to pay for such space prior to posting the late received copy. If Copy is furnished and delivered as required above and such Copy is not rejected by Company pursuant to the terms hereof (i) the Copy shall be posted, and (ii) in the case of showing based programs the Copy shall be Significantly Posted (as hereinafter defined) by Company within five (5) working days of the date for the commencement of the Advertising Period set forth on the first page of this Agreement. For the purposes hereof, a program shall be deemed to be Significantly Posted if at least 85% of the program has been posted. Nudity, pornographic, profane or obscene copy shall not be permitted. The character, design, text and illustrations on advertising copy and the material used shall be subject to approval by Company and by location owner, transit company/authority or third party controlling location ("Owner"). If copy is rejected, Advertiser shall continue to be liable for the full term of this Contract and Advertiser shall be responsible for providing an acceptable replacement copy within ten days of notification that a previous copy was rejected. If production is received after the date specified by Company, Company shall be entitled to full payment for the contract period even if partial or no display results. Advertiser shall indemnify, defend and save harmless Company and Owner against all claims and liabilities arising out of the advertising material displayed under this Contract, including but not limited to any claim for defamation, or infringement of any copyright, trademark, or other intellectual property or privacy right and reasonable attorneys' fees and expenses incurred in defending any such claims.

**3.** Should Advertiser's copy be damaged, defaced, or deteriorated for any reason whatsoever, including ordinary wear and tear, or if lost or stolen, Advertiser shall furnish a replacement copy, upon Company's request, without liability or expense to Company. If Advertiser fails to provide such replacement copy, Company may use the location involved in any manner, without releasing Advertiser from obligation to pay for such location. Unless otherwise specified on the face hereof, there will be a service charge for all installations on walls and for any changes in any display material after initial placement. All designs for displays produced by Company will be faithfully reproduced. Company will maintain displays in good condition to the extent of matters reasonably within Company's control or assumed responsibilities. Any repainting or reposting requested by Advertiser in addition to that specified herein, if any, shall be paid by Advertiser in advance per Company's current quoted prices.

**4.** If for any reason whatsoever during the term hereof (i) Company is unable to secure any specified location or loses the right to use any location, or (ii) any location becomes

obstructed, destroyed or defaced, or (iii) Company fails to timely meet its posting requirements hereunder, any resulting loss of advertising shall not be deemed a breach or termination of this Contract. Company shall have the option to replace lost locations with locations of equal value per Company's prices and/or classifications, or to issue a pro-rated credit. Any delay in commencing of service and/or posting of fewer locations than specified and/or resulting loss of advertising service caused by any reason whatsoever, shall not render Company liable for any damages or offsets of any kind and shall be remedied solely by extending the Advertising Period of this Contract to provide an equivalent amount of advertising service at the contracted location or a replacement location of equal value, or at Company's option, result in a pro-rated credit, with all other remedies at law or equity being expressly waived by Advertiser. Notwithstanding anything contained herein to the contrary, if any location is lost for any reason whatsoever, Company shall also have the option to terminate this Contract and receive payment in full for services through the termination date.

**5.** Where illuminated displays are provided, illumination will be from dusk to midnight. If illumination is halted or reduced for any reason, including but not limited to operation of law or malfunction of equipment, Advertiser shall receive a credit for the period of reduced or non-illumination at the rate of fifteen percent (15%) of the contract price for the impacted period, provided Advertiser shall have first given written notice to Company of the illumination problem and same continues for more than five (5) days after Company's receipt of such notice.

**6.** Advertiser shall inspect the display within three (3) days after installation. Unless within such period Advertiser gives written notice to Company specifying any defect, the display shall be conclusively presumed to have been inspected and approved by Advertiser for all purposes whatsoever, including content and location of displays. If after installation of display Owner disapproves any advertisement, or if adverse publicity results from any display, Company shall have the right to remove advertisement and, at its option, either terminate this Contract or request a new acceptable advertisement copy pursuant to paragraph 2 above. Company and Advertiser accept this Contract subject to all federal, state and municipal laws and regulations. In the event any advertisement becomes illegal, Company reserves the right to terminate same upon notice to Advertiser. Acceptance of this Contract is subject to credit check and approval by Company. Company, in its sole discretion, may extend or reject credit, or at any time during the term, withdraw credit and Company may thereupon require partial or full payment of the remaining contract amount in advance. In the event of any termination under this paragraph, Advertiser's obligation shall cease as of the effective termination date.

**7.** Agency and Advertiser shall be jointly and severally liable for payment of the amounts owed under this Contract. In the event of default or material breach by Advertiser/Agency, in addition to other remedies available at law, Company may: (a) cancel this Contract without prior notice and demand payments of all amounts remaining due and owing; (b) without terminating this Contract, declare the entire balance of payments to be made hereunder immediately due and payable; (c) remove all of Advertiser's displays without limiting Advertiser's liability hereunder; and/or (d) declare Advertiser in default under any other agreement with Company. Waiver by Company of any breach by Advertiser/Agency hereunder shall not prejudice the rights of Company with respect to any breach not specifically waived by Company. In the event of legal action arising out of this Contract, Company shall be entitled to recover its reasonable

DocuSign Envelope ID: 9A01BAB2-C28B-46E3-A24A-FD876EB68958

attorneys' fees and out of pocket expenses. This Contract and all related claims shall be construed according to the laws of the State of Arizona and Maricopa County, Arizona shall be the proper and exclusive legal jurisdiction and venue for any resulting legal action.

8. Invoicing will be rendered monthly in advance dating from the commencement date of the first advertising period. Invoices rendered to Advertiser shall be conclusive as to the correctness of the items stated unless Company receives written objection within fifteen (15) days thereof. Non-receipt of invoices or lack of invoicing, shall not impact Advertiser's liability hereunder. Any discounts given shall be forfeited/reversed for invoices not paid within sixty (60) days from the date thereof. All rates and adjustments are computed on the basis of thirty (30) days to the month, unless a different period is specified on the face hereof. Invoices shall be due thirty (30) days after the date of invoice and failure to pay within such timeframe shall result in a default hereunder and shall further be deemed a default under any other agreements with Company. Invoices not paid when due shall accrue interest at the rate of one and one-half percent (1.5%) per month (18% annual), or such lesser rate permitted by law. Notwithstanding the foregoing, in the event that Company accepts payment by ACH or credit card, Company shall have the right, at Company's option, to either (a) require Advertiser to pay all amounts due or coming due under the Contract on the date of the ACH or credit card payment or (b) require Advertiser to set up recurring payments whereby the Advertiser's ACH or credit card is charged on each invoice date for the full invoice amount.

9. Company shall not be held responsible for unused posters, displays or other copy provided by Advertiser and Company may dispose of any such materials. Company may promote Company's own business through the use of Advertiser's posters or displays in any manner whatsoever. Company is an Equal Opportunity Employer.

10. This Contract contains the full agreement of the parties, and no prior representation or assurance, verbal or written not contained herein, shall affect or alter the obligation of either party hereto. This Contract is not cancelable or assignable by Advertiser, nor may the subject of the advertising be changed without the consent of Company. Notwithstanding the foregoing, agreements for transit displays may be cancelled by Advertiser upon providing at least 90-days written notice prior to affected posting date, with Advertiser paying, upon invoicing, short rate for actual length of term.

11. The following provisions shall be applicable in the event that this Contract shall be for the display of advertising copy on a LED, LCD or other digital display sign ("Digital Sign"): Notwithstanding anything herein to the contrary, the Company shall be not obligated to display the copy for more than 91% of the display time provided hereunder (the "Guaranteed Display Time"). If the Company displays the copy for at least the Guaranteed Display time, there shall be no reduction in the fee paid hereunder or extension of the term hereof. If the Company displays the copy for less than the Guaranteed Display Time, the Company shall, in its sole discretion, either

(i) terminate this Contract and reimburse the Advertiser for fees paid relating to the period for which the copy was not displayed for at least the Guaranteed Display Time, (ii) equitably extend the Advertising Period of this Contract at the contracted location or a replacement location of equal value, or (iii) issue to Advertiser a pro-rated credit for advertising services equivalent to the period for which copy was not displayed for the Guaranteed Display Time. The Advertiser hereby expressly waives all other remedies at law or equity, and the Company shall have no other liability to the Advertiser as a result of any failure to display the copy for at least the Guaranteed Display Time. In addition to the foregoing, the Company shall have the right at any time to preempt the display of copy in order to utilize the Digital Sign(s) for public service messages in connection with (i) an Amber Alert, or (ii) at the request of any Federal, State or local authority, any public emergency (including but not limited to emergencies related to homeland security) (an "Emergency Interruption"). In such event, the Company shall not be in breach of this Contract and the Company shall have no liability to the Advertiser pursuant to the preceding paragraph or otherwise as a result of any such Emergency Interruption. The Advertiser hereby expressly waives any remedies at law or equity to which the Advertiser might otherwise be entitled as a result of such Emergency Interruption. For the purposes of the provisions hereof pertaining to the display of advertising on a Digital Sign, "copy" shall be deemed to mean any advertisement displayed on such sign whether the same is animated, static or otherwise, specifically including, but not limited to, streaming content or digital images, as applicable.

12. Agency/Advertiser hereby represents, warrants and confirms that it is aware of the requirements of 18 U.S.C. §§ 2257-2257A and that it fully complies with them either by certifying to the U.S. Attorney General, in the form required by 28 C.F.R. § 75.9, that Agency/Advertiser collects and maintains individually identifiable information relating to models used in the advertisement to be displayed pursuant to the terms hereof (including but not limited to their names, addresses, and dates of birth) in accordance with applicable Federal and/or State tax and labor or other law, or that Agency/Advertiser creates, maintains, cross-indexes and makes available for inspection records as required by 28 C.F.R. §§ 75.2-75.5. Upon request, Agency/Advertiser will provide Company with proof of its compliance.

13. If the advertising copy concerns a political, religious or social issue, the Advertiser and Agency shall not make any press release or other public announcement or media outreach regarding this Agreement or the related advertising copy that refers to the Company without the Company's express prior written consent (which consent may be granted or denied in the Company's sole discretion), except as required under applicable law, in which case Advertiser shall obtain the approval of the Company as to the form, nature and extent of the press release, public announcement or media outreach prior to issuing the press release or making the public announcement.

--- End of Terms and Conditions ---

DocuSign Envelope ID: 9A01BAB2-C28B-46E3-A24A-FD876EB68958

# ADVERTISER AGREEMENT

**OUTFRONT/**

PAGE 1 OF 4

DATE: 10/01/19

CONTRACT NO.: **2999588**

ADVERTISER: Ellen Zhou
BRAND:
CAMPAIGN:

CLIENT SUPPLIES PRODUCTION: Yes
ACCOUNT EXECUTIVE: Phillip Monarez (J45)

OUTFRONTmedia
1695 Eastshore Hwy.
Berkeley, CA 94710
510-527-3350
(510) 527-7041

Advertiser Bill-To# 1132824
Ellen Zhou Lee Zhou for Mayor
2600 San Bruno Avenue
San Francisco, CA 94134
415-205-9132
Attn: Ellen Lee Zhou

*Copy must meet Production specifications and be received 10 working days prior to each advertising period.*
THIS AGREEMENT AND THE COPY TO BE DISPLAYED HEREUNDER IS SUBJECT TO THE APPROVAL OF OUTFRONT MEDIA'S MARKET GENERAL MANAGER AND/OR THE OWNER OF THE LOCATION AS APPLICABLE

Subject to the terms of the Production Information Addendum Page and the OUTFRONT Media Terms and Conditions of Advertising Service each attached hereto and made a part hereof, "ADVERTISER/AGENCY" hereby contracts with OUTFRONT Media ("Company") for the display of advertising Copy ("Copy") on the outdoor advertising display(s) described below, commencing approximately on the commencement date of the Advertising Period listed below. Advertiser/Agency shall provide the Copy in the form and type specified by Company.
See Production Information Addendum page for shipping quantities and addresses.

| Market | Media/Location(s) | Size | GRP/ IMP 18+ | Units | Advertising Period | No. of Periods | * | Period Cost |
|---|---|---|---|---|---|---|---|---|
| SF Bay Area-Posters | Posters/Unit# 1342-3 7Th 200 ft N/O Geary E/S F/N | 105"x228" | 16,089 | 1 | 10/07/19-11/03/19 | 1.00 | 4W | $925.00 |
| SF Bay Area-Posters | Posters/Unit# 1395-2 Polk & California SE/S9's F/NW | 105"x228" | 49,720 | 1 | 10/07/19-11/03/19 | 1.00 | 4W | $825.00 |
| SF Bay Area-Posters | Posters/Unit# 215-1 San Bruno 175 ft S/O Silliman W/S F/S | 105"x228" | 53,482 | 1 | 10/07/19-11/03/19 | 1.00 | 4W | $925.00 |
| SF Bay Area-Posters | Posters/Unit# 2969-1 Howard St 194 ft E/O 10Th St S/S F/NE | 105"x228" | 75,070 | 1 | 10/07/19-11/03/19 | 1.00 | 4W | $925.00 |

Net Agreement Total: $3,600.00

Special Instructions:

ACCEPTED AND AGREED TO BY - OUTFRONT MEDIA

BY _____ DATE _____

ADVERTISER/AGENCY

PLEASE PRINT

AUTHORIZED SIGNATURE - TITLE

NAME - TITLE

BY _____ DATE _____

* Period Codes: M=Monthly; W=Weekly; 4W=4 Weeks; D=Daily; OT=One Time TF=Till Forbid

THIS AGREEMENT IS NON-CANCELABLE BY ADVERTISER/AGENCY EXCEPT AS SET FORTH IN THE TERMS AND CONDITIONS ATTACHED HERETO WITH RESPECT TO TRANSIT DISPLAYS ONLY. THIS AGREEMENT CONSISTS OF THIS PAGE, THE PRODUCTION INFORMATION ADDENDUM PAGE, AND THE OUTFRONT MEDIA TERMS AND CONDITIONS OF ADVERTISING SERVICE INCORPORATED HEREIN, ALL OF WHICH ADVERTISER/AGENCY HEREBY ACKNOWLEDGES RECEIVING OR HAVING ACCESS TO. ANY MISSING PAGES OF THIS AGREEMENT MAY BE OBTAINED OR REQUESTED THROUGH ANY OUTFRONT MEDIA OFFICE OR REPRESENTATIVE IF LOST OR NOT RECEIVED BY ADVERTISER/AGENCY. FACSIMILE SIGNATURES SHALL HAVE THE SAME FORCE AND EFFECT AS ORIGINAL SIGNATURES. THIS AGREEMENT MAY BE EXECUTED IN SEVERAL COUNTERPARTS, EACH OF WHICH SHALL CONSTITUTE ONE AND THE SAME COPY. AGENCY AND/OR THE SIGNATORY HERETO REPRESENTS AND WARRANTS THAT THEY ARE AUTHORIZED TO EXECUTE THE SAME ON BEHALF OF AND BIND THE ADVERTISER AND THAT THE ADVERTISER APPROVES SAME.

# ADVERTISER AGREEMENT - PRODUCTION INFORMATION ADDENDUM

**OUTFRONT/**

PAGE 2 OF 4

CONTRACT NO.: **2999588**

DATE: 10/01/19

ACCOUNT EXECUTIVE: Phillip Monares (J45)

ADVERTISER: Ellen Zhou

BRAND:

CAMPAIGN:

Advertiser Bill-To# 1132824
Ellen Zhou Lee Zhou for Mayor
2600 San Bruno Avenue
San Francisco, CA 94134
415-205-9132
Attn: Ellen Lee Zhou

*Copy must meet Production specifications and be received 10 working days prior to each advertising period.*
THIS AGREEMENT AND THE COPY TO BE DISPLAYED HEREUNDER IS SUBJECT TO THE APPROVAL OF OUTFRONT MEDIA'S MARKET GENERAL MANAGER AND THE OWNER OF THE LOCATION AS APPLICABLE.

| Market | Media/Location(s) | Size | Copy Due Date | Shipping Quantity | Shipping Address | Service AE | Ext. Fab Per Sq Ft |
|---|---|---|---|---|---|---|---|
| SF Bay Area-Posters | Posters/Unit# 1342-3<br>7Th 200 ft N/O Geary E/S F/N | 10'5"x22'8" | 09/23/19 | 1 | OUTFRONT Media<br>1695 Eastshore Hwy<br>Berkeley,CA 94710<br>510-527-3350<br>Attn Outdoor Operations | | |
| SF Bay Area-Posters | Posters/Unit# 1395-2<br>Polk & California SE/S% F/NW | 10'5"x22'8" | 09/23/19 | 1 | OUTFRONT Media<br>1695 Eastshore Hwy<br>Berkeley,CA 94710<br>510-527-3350<br>Attn Outdoor Operations | | |
| SF Bay Area-Posters | Posters/Unit# 2155-1<br>San Bruno 175 ft S/O Silliman W/S F/S | 10'5"x22'8" | 09/23/19 | 1 | OUTFRONT Media<br>1695 Eastshore Hwy<br>Berkeley,CA 94710<br>510-527-3350<br>Attn Outdoor Operations | | |
| SF Bay Area-Posters | Posters/Unit# 2969-1<br>Howard St 194 ft E/O 10Th St S/S F/NE | 10'5"x22'8" | 09/23/19 | 1 | OUTFRONT Media<br>1695 Eastshore Hwy<br>Berkeley,CA 94710<br>510-527-3350<br>Attn Outdoor Operations | | |

# OUTFRONT MEDIA TERMS AND CONDITIONS OF ADVERTISING SERVICE

1. As used in this herein, Company shall mean OUTFRONT Media and Advertiser shall mean and be deemed to include, in addition to Advertiser, any advertising agency or any other agent or licensee of Advertiser (collectively "Advertiser").

2. At least ten (10) working days before the estimated start date, Advertiser, at its sole expense, shall furnish and deliver to Company or to service points designated by Company, sufficient supply of advertising copy, in form and type specified by Company along with written notice to Company setting forth required posting instructions. If copy is not so received, a loss of service may occur or additional costs may be charged by Company although commercially reasonable efforts will be used to post copy as promptly as practicable after receipt from Advertiser. If Advertiser requests expedited installation within five working days of receipt of late received copy, a fee of not less than $650 per location will be payable. In any event, if copy is not received in a timely manner, Company may use subject locations in any manner, without limiting Advertiser's liability to pay for such space prior to posting the late received copy. If Copy is furnished and delivered as required above and such Copy is not rejected by Company pursuant to the terms hereof (i) the Copy shall be posted, and (ii) in the case of showing based programs the Copy shall be Significantly Posted (as hereinafter defined) by Company within five (5) working days of the date for the commencement of the Advertising Period set forth on the first page of this Agreement. For the purposes hereof, a program shall be deemed to be Significantly Posted if at least 85% of the program has been posted. Nudity, pornographic, profane or obscene copy shall not be permitted. The character, design, text and illustrations on advertising copy and the material used shall be subject to approval by Company and by location owner, transit company/authority or third party controlling location ("Owner"). If copy is rejected, Advertiser shall continue to be liable for the full term of this Contract and Advertiser shall be responsible for providing an acceptable replacement copy within ten days of notification that a previous copy was rejected. If production is received after the date specified by Company, Company shall be entitled to full payment for the contract period even if partial or no display results. Advertiser shall indemnify, defend and save harmless Company and Owner against all claims and liabilities arising out of the advertising material displayed under this Contract, including but not limited to any claim for defamation, or infringement of any copyright, trademark, or other intellectual property or privacy right and reasonable attorneys' fees and expenses incurred in defending any such claims.

3. Should Advertiser's copy be damaged, defaced, or deteriorated for any reason whatsoever, including ordinary wear and tear, or if lost or stolen, Advertiser shall furnish a replacement copy, upon Company's request, without liability or expense to Company. If Advertiser fails to provide such replacement copy, Company may use the location involved in any manner, without releasing Advertiser from obligation to pay for such location. Unless otherwise specified on the face hereof, there will be a service charge for all installations on walls and for any changes in any display material after initial placement. All designs for displays produced by Company will be faithfully reproduced. Company will maintain displays in good condition to the extent of matters reasonably within Company's control or assumed responsibilities. Any repainting or reposting requested by Advertiser in addition to that specified herein, if any, shall be paid by Advertiser in advance per Company's current quoted prices.

4. If for any reason whatsoever during the term hereof (i) Company is unable to secure any specified location or loses the right to use any location, or (ii) any location becomes

obstructed, destroyed or defaced, or (iii) Company fails to timely meet its posting requirements hereunder, any resulting loss of advertising shall not be deemed a breach or termination of this Contract. Company shall have the option to replace lost locations with locations of equal value per Company's prices and/or classifications, or to issue a pro-rated credit. Any delay in commencing of service and/or posting of fewer locations than specified and/or resulting loss of advertising service caused by any reason whatsoever, shall not render Company liable for any damages or offsets of any kind and shall be remedied solely by extending the Advertising Period of this Contract to provide an equivalent amount of advertising service at the contracted location or a replacement location of equal value, or at Company's option, result in a pro-rated credit, with all other remedies at law or equity being expressly waived by Advertiser. Notwithstanding anything contained herein to the contrary, if any location is lost for any reason whatsoever, Company shall also have the option to terminate this Contract and receive payment in full for services through the termination date.

5. Where illuminated displays are provided, illumination will be from dusk to midnight. If illumination is halted or reduced for any reason, including but not limited to operation of law or malfunction of equipment, Advertiser shall receive a credit for the period of reduced or non-illumination at the rate of fifteen percent (15%) of the contract price for the impacted period, provided Advertiser shall have first given written notice to Company of the illumination problem and same continues for more than five (5) days after Company's receipt of such notice.

6. Advertiser shall inspect the display within three (3) days after installation. Unless within such period Advertiser gives written notice to Company specifying any defect, the display shall be conclusively presumed to have been inspected and approved by Advertiser for all purposes whatsoever, including content and location of displays. If after installation of display Owner disapproves any advertisement, or if adverse publicity results from any display, Company shall have the right to remove advertisement and, at its option, either terminate this Contract or request a new acceptable advertisement copy pursuant to paragraph 2 above. Company and Advertiser accept this Contract subject to all federal, state and municipal laws and regulations. In the event any advertisement becomes illegal, Company reserves the right to terminate same upon notice to Advertiser. Acceptance of this Contract is subject to credit check and approval by Company. Company, in its sole discretion, may extend or reject credit, or at any time during the term, withdraw credit and Company may thereupon require partial or full payment of the remaining contract amount in advance. In the event of any termination under this paragraph, Advertiser's obligation shall cease as of the effective termination date.

7. Agency and Advertiser shall be jointly and severally liable for payment of the amounts owed under this Contract. In the event of default or material breach by Advertiser/Agency, in addition to other remedies available at law, Company may: (a) cancel this Contract without prior notice and demand payments of all amounts remaining due and owing; (b) without terminating this Contract, declare the entire balance of payments to be made hereunder immediately due and payable; (c) remove all of Advertiser's displays without limiting Advertiser's liability hereunder; and/or (d) declare Advertiser in default under any other agreement with Company. Waiver by Company of any breach by Advertiser/Agency hereunder shall not prejudice the rights of Company with respect to any breach not specifically waived by Company. In the event of legal action arising out of this Contract, Company shall be entitled to recover its reasonable

attorneys' fees and out of pocket expenses. This Contract and all related claims shall be construed according to the laws of the State of Arizona and Maricopa County, Arizona shall be the proper and exclusive legal jurisdiction and venue for any resulting legal action.

8. Invoicing will be rendered monthly in advance dating from the commencement date of the first advertising period. Invoices rendered to Advertiser shall be conclusive as to the correctness of the items stated unless Company receives written objection within fifteen (15) days thereof. Non-receipt of invoices or lack of invoicing, shall not impact Advertiser's liability hereunder. Any discounts given shall be forfeited/reversed for invoices not paid within sixty (60) days from the date thereof. All rates and adjustments are computed on the basis of thirty (30) days to the month, unless a different period is specified on the face hereof. Invoices shall be due thirty (30) days after the date of invoice and failure to pay within such timeframe shall result in a default hereunder and shall further be deemed a default under any other agreements with Company. Invoices not paid when due shall accrue interest at the rate of one and one-half percent (1.5%) per month (18% annual), or such lesser rate permitted by law. Notwithstanding the foregoing, in the event that Company accepts payment by ACH or credit card, Company shall have the right, at Company's option, to either (a) require Advertiser to pay all amounts due or coming due under the Contract on the date of the ACH or credit card payment or (b) require Advertiser to set up recurring payments whereby the Advertiser's ACH or credit card is charged on each invoice date for the full invoice amount.

9. Company shall not be held responsible for unused posters, displays or other copy provided by Advertiser and Company may dispose of any such materials. Company may promote Company's own business through the use of Advertiser's posters or displays in any manner whatsoever. Company is an Equal Opportunity Employer.

10. This Contract contains the full agreement of the parties, and no prior representation or assurance, verbal or written not contained herein, shall affect or alter the obligation of either party hereto. This Contract is not cancelable or assignable by Advertiser, nor may the subject of the advertising be changed without the consent of Company. Notwithstanding the foregoing, agreements for transit displays may be cancelled by Advertiser upon providing at least 90-days written notice prior to affected posting date, with Advertiser paying, upon invoicing, short rate for actual length of term.

11. The following provisions shall be applicable in the event that this Contract shall be for the display of advertising copy on a LED, LCD or other digital display sign ("Digital Sign"): Notwithstanding anything herein to the contrary, the Company shall be not obligated to display the copy for more than 91% of the display time provided hereunder (the "Guaranteed Display Time"). If the Company displays the copy for at least the Guaranteed Display time, there shall be no reduction in the fee paid hereunder or extension of the term hereof. If the Company displays the copy for less than the Guaranteed Display Time, the Company shall, in its sole discretion, either

(i) terminate this Contract and reimburse the Advertiser for fees paid relating to the period for which the copy was not displayed for at least the Guaranteed Display Time, (ii) equitably extend the Advertising Period of this Contract at the contracted location or a replacement location of equal value, or (iii) issue to Advertiser a pro-rated credit for advertising services equivalent to the period for which copy was not displayed for the Guaranteed Display Time. The Advertiser hereby expressly waives all other remedies at law or equity, and the Company shall have no other liability to the Advertiser as a result of any failure to display the copy for at least the Guaranteed Display Time. In addition to the foregoing, the Company shall have the right at any time to preempt the display of copy in order to utilize the Digital Sign(s) for public service messages in connection with (i) an Amber Alert, or (ii) at the request of any Federal, State or local authority, any public emergency (including but not limited to emergencies related to homeland security) (an "Emergency Interruption"). In such event, the Company shall not be in breach of this Contract and the Company shall have no liability to the Advertiser pursuant to the preceding paragraph or otherwise as a result of any such Emergency Interruption. The Advertiser hereby expressly waives any remedies at law or equity to which the Advertiser might otherwise be entitled as a result of such Emergency Interruption. For the purposes of the provisions hereof pertaining to the display of advertising on a Digital Sign, "copy" shall be deemed to mean any advertisement displayed on such sign whether the same is animated, static or otherwise, specifically including, but not limited to, streaming content or digital images, as applicable.

12. Agency/Advertiser hereby represents, warrants and confirms that it is aware of the requirements of 18 U.S.C. §§ 2257-2257A and that it fully complies with them either by certifying to the U.S. Attorney General, in the form required by 28 C.F.R. § 75.9, that Agency/Advertiser collects and maintains individually identifiable information relating to models used in the advertisement to be displayed pursuant to the terms hereof (including but not limited to their names, addresses, and dates of birth) in accordance with applicable Federal and/or State tax and labor or other law, or that Agency/Advertiser creates, maintains, cross-indexes and makes available for inspection records as required by 28 C.F.R. §§ 75.2-75.5. Upon request, Agency/Advertiser will provide Company with proof of its compliance.

13. If the advertising copy concerns a political, religious or social issue, the Advertiser and Agency shall not make any press release or other public announcement or media outreach regarding this Agreement or the related advertising copy that refers to the Company without the Company's express prior written consent (which consent may be granted or denied in the Company's sole discretion), except as required under applicable law, in which case Advertiser shall obtain the approval of the Company as to the form, nature and extent of the press release, public announcement or media outreach prior to issuing the press release or making the public announcement.

—————— **End of Terms and Conditions** ——————

# EXHIBIT B

**Bank of America** 

*Online Banking*

## Business Fundamentals Chk - 4023: Account Activity Transaction Details

| | |
|---|---|
| **Check number:** | 00000001035 |
| **Post date:** | 10/09/2019 |
| **Amount:** | -4,040.00 |
| **Type:** | Check |
| **Description:** | Check |
| **Merchant name:** | 1 |
| **Transaction category:** | Cash, Checks & Misc: Checks |



ELLEN LEE ZHOU FOR MAYOR 2019
ELECTION COMMITTEE
CAMPAIGN ACCOUNT                    PER ENV                              1035
2650 SAN BRUNO AVE
SAN FRANCISCO CA 94134

DATE 09/30/2019

PAY TO THE
ORDER OF  Outfront Media          $ 4,040.00

Four thousand forty dollars & 0/100          DOLLARS

Bank of America 

FOR Bill # 299958 and 4 billboards

#001035#  :121000358:  3250130340 23#   /0000404000/

# EXHIBIT C

(Version 6.9)



Page 1 of 3

September 20, 2019

## CONTRACT FOR OUTDOOR ADVERTISING

| CONTRACTED BY AGENCY ON BEHALF OF ADVERTISER: | | |
|---|---|---|
| CUSTOMER # | | INVOICE |
| NAME | | |
| ADDRESS | | |
| CITY/STATE/ZIP | | |
| CONTACT | | |
| EMAIL ADDRESS | | |
| PHONE # | FAX # | |
| P.O. # | | |
| ADVRTSR / PROD | | |

| CONTRACTED DIRECTLY BY ADVERTISER: | | |
|---|---|---|
| CUSTOMER # | TEMP-0234467 | INVOICE |
| NAME | Asian American Freedom PAC | |
| ADDRESS | 111 N. LaBrea Avenue | |
| CITY/STATE/ZIP | Inglewood, CA 90301-1752 | |
| CONTACT | Mark Tsuneishi | |
| EMAIL ADDRESS | mtsuneishi@gmail.com | |
| PHONE # | FAX # | |
| P.O. # | | |
| PRODUCT NAME | Ellen Zhou for Mayor / Policital candidate | |

| Market Name / Location | Illum Y / N | No. Of Installations | No. Of Panels Poster | No. Of Panels Bulletin | Term In 4-Week Periods | Size | Face Rate | Rate Per 4-Week Period | Contract Total |
|---|---|---|---|---|---|---|---|---|---|
| Jr Posters 10/7-11/3 7385, 7390, 7416, 7430 7461, 7503, 7323, 7434 7544 | | | 9 | | 1 | 5' x 11' | $ 200.00 | $ 1,800.00 | $ 1,800.00 |
| Posters 10/7-11/3 1453, 1127 | | | 2 | | 1 | 12' x 24' | $ 2,000.00 | $ 4,000.00 | $ 4,000.00 |
| Poster 1174 10/7-11/3 | | | 1 | | 1 | 12' x 24' | $ 1,650.00 | $ 1,650.00 | $ 1,650.00 |

| Display Commences: | Oct. 7, 2019 | | | |
|---|---|---|---|---|
| Special Instructions/ Additional Charges: | | Space Amount | $ 7,450.00 | $ 7,450.00 |
| *Production is for 11 Jr posters and 4 posters* | | Production Charges | | $ 1,425.00 |
| | | Extension Charges | | |
| | | Extended Illumination | | |
| | | Estimated Shipping Charges | | |
| | | TOTAL INVOICE AMOUNT | $ 7,450.00 | $ 8,875.00 |

Agency/Advertiser hereby contracts for the outdoor advertising services described above upon the terms set forth above AND ON PAGES 2 AND 3, which Agency/Advertiser hereby acknowledges and confirms receipt of by executing in the space provided below. Contracts transmitted to Clear Channel Outdoor via fax machines or electronic mail are to be treated as original contracts. This contract must be signed by both Agency or Advertiser and CCO to be effective

| Agency: | | Advertiser: | ASIAN AMERICAN Freedom PAC |
|---|---|---|---|
| Signature: | | Signature: | Mark Tsuc— |
| Name: | Date | Name: | MARK TSUNEISHI   Date 9/24/19 |

| Clear Channel Outdoor, LLC | | |
|---|---|---|
| Signature: | Name: Mary Prisco | Date |

| FOR INTERNAL USE: | Contract No. | File Name | |
|---|---|---|---|
| | A/E (s) Name / No. | Selling Branch Address | San Francisco |
| New | x | Sheryl Wyrostek | 555 12th ST Oakland, CA 94607 |
| Renewal | | | 510-446-7231 |
| Takeover | | | 510-835-5900 |
| Product / Class Number: | | Market Type: | GENERAL |

# EXHIBIT D

**From:** "Monares, Phillip <phillip.monares@outfrontmedia.com>
**Date:** September 26, 2019 at 1:58:38 PM PDT
**To:** Paul Taylor <ibtbl@icloud.com>
**Subject: FW: SF Poster Proposal**

Paul,

1

GOOD NEWS! We can move forward.

I am at my desk until about 4Pm … (51) 559-1123.

Thanks!

---

**From:** Monares, Phillip
**Sent:** Wednesday, September 25, 2019 12:58 PM
**To:** Paul Taylor <ibtbl@icloud.com>
**Subject:** SF Poster Proposal
**Importance:** High

Paul,

Good afternoon. We cleared one hurdle, just waiting for the final blessing.

Attached is a Proposal for what we can do for a 10/7/19 Start. And a Location Map (although I'm certain you are familiar with the locations).

I will be in touch …

Regards,

**PHILLIP E. MONARES**

Account Executive

T (510) 559-1123