1  Steven C. Bailey, Esq. (SBN 146382)
2  Robert E. Williams (SBN 255179)
   California Constitutional Rights Foundation
3  932 D Street #2
   Ramona, CA 92065
4  530-409-0027
   800-593-4440
5  judgestevenc.bailey@gmail.com
   rew@rewilliamslaw.com
6
7  Attorneys for Plaintiffs Ellen Lee Zhou and
   Asian America Freedom Political Action
8  Committee

9

10                **UNITED STATES DISTRICT COURT**

11               **NORTHERN DISTRICT OF CALIFORNIA**

12 | Ellen Lee Zhou, an individual, and      | Case Number:  3:19-cv-07269-WHO
   | Asian American Freedom Political        |
13 | Action Committee,                       |
   |                                         | **PLAINTIFFS' MEMORANDUM IN**
14 |                Plaintiffs,              | **OPPOSITION TO LONDON BREED**
   |                                         | **AND CLEAR CHANNEL OUTDOOR**
15 | v.                                      | **LLC'S MOTIONS TO DISMISS**
   |                                         | **PURSUANT TO § 425.16 CAL. CODE**
16 |                                         | **CIV. PROC.**
17 | London Breed, Clear Channel Outdoor,    |
   | LLC, Clear Channel Outdoor Holdings,    | Date:   May 6, 2020
18 | Inc., OutFront Media, Inc., and Does 1- | Time:   2:00 p.m.
   | 50, inclusive,                          |
19 |                                         |
   |                Defendants.              |
20

21

22

23

24

25

26

27

28
                                    - 1 -

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**………………………………………………………3

**I.**     **INTRODUCTION AND SUMMARY OF ARGUMENT**……………………………..7

**II.**     **THE FIRST AMENDED COMPLAINT**…………………………………………...9

**III.**     **LAW AND ARGUMENT**

         **A.**     **PROCEDURES UNDER CCP § 425.16 IN THE FEDERAL COURTS**……..13

         **B.**     **SECOND CAUSE OF ACTION**…………………………………..…...14

         **C.**     **THIRD CAUSE OF ACTION**…………………………………………...17

         **D.**     **FOURTH CAUSE OF ACTION** ………………………………….……18

         **E.**     **DEFENDANTS' FIRST AMENDMENT VIOLATIONS**……………….….19

         **F.**     **THE MOTION TO DISMISS FILED BY LONDON**

                 **BREED IN HER OFFICIAL CAPACITY WAS NOT**

                 **FILED BY A PARTY DEFENDANT** ………….………………………..….26

**IV.**     **CONCLUSION** …………………………….……....………………….…..27

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO
DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

1

# TABLE OF AUTHORITIES

2

**Federal Cases**

3
*Acosta Orellana v. CropLife Int'l*,
　　711 F.Supp.2d 81(D.D.C. 2010)...................................................................25

4

*Ark. Writers' Project, Inc. v. Ragland*,
5
　　481 U.S. 221(1987)...................................................................................24

6
*Ashcroft v. Iqbal*,
　　556 U.S. 662 (2009)..................................................................................25

7

*Bell Atl. Corp. v. Twombly*,
8
　　550 U.S. 544 (2007).............................................................................passim

9
*Bender v. Rocky Mountain Drilling Assocs.*,
　　648 F. Supp. 330 (D.D.C. 1986)................................................................9, 22

10

*Blum v. Yaretsky*,
11
　　457 U.S. 991(1982)...........................................................................passim

12

*Buckley v. Valeo*,
13
　　424 U.S. 1 (1976)......................................................................19

14
*Cantwell v. Connecticut*,
　　310 U.S. 296 (1940)................................................................................19

15

*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co*.,
16
　　827 F.2d 1291 (9th Cir. 1987)...................................................................21

17
*Cohen v. California*,
　　403 U.S. 15 (1971).................................................................................19

18

*Conley v. Gibson*,
19
　　355 U.S. 41(1957)..................................................................................22

20
*Craftmatic Sec. Litig. v. Kraftsow*,
　　890 F.2d 628 (3d Cir. 1989)..................................................................... 25

21

*Eu v. S.F. Cty. Democratic Cent. Comm.*,
22
　　489 U.S. 214 (1989)...............................................................................19

23
*FCC v. Pacifica Foundation*,
　　438 U.S. 726 (1978)...............................................................................19

24

*Guar. Residential Lending, Inc. v. Int'l Mortg. Ctr., Inc*.,
25
　　305 F. Supp. 2d 846, 853 (N.D. Ill. 2004)..............................................9, 18
.

26
*Hafer v. Melo*,
　　502 U.S. 21 (1991).............................................................................22, 25

27

28

- 3 -

*HIJ Indus. v. Roy (In re Roy),*
    547 B.R. 760, 765 (Bankr. E.D. Ky. 2016)………………………………….…9, 18, 19

*Hill v. Shelander,*
    924 F.2d 1370 (7th Cir. 1991)……………………………………………………26

*Hutchens v. Alameda Cty. Soc. Servs. Agency,*
    No. C-06-06870 SBA, 2008 U.S. Dist. LEXIS 69429 (N.D. Cal. Sep. 9, 2008)……...25

*Kowal v. MCI Communications Corp.,*
    1992 U.S. Dist. LEXIS 7437 (D.D.C. No. 90-2862)…………………..……………... 25

*Kentucky v. Graham,*
    473 U.S. 159 (1985)……………………………………………………………………25

*Leadsinger, Inc. v. BMG Music Publ'g,*
    512 F.3d 522 (9th Cir. 2008)……………………………………………………23, 24

*Leathers v. Medlock,*
    499 U.S. 439 (1991)…………………………………………………..……17, 26
.

*Manhattan Cmty. Access Corp. v. Halleck,*
    139 S. Ct. 1921 (2019)…………………………………………..…………………22

*Metabolife Int'l v. Wornick,*
    264 F.3d 832, 846 (9th Cir. 2001)……………………………………………………14

*Mills v. Alabama,*
    384 U.S. 214 (1966)…………………………………………………………………...19

*Monitor Patriot Co. v. Roy,*
    401 U.S. 265 (1971)…………………………………………………………………19

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress,*
    890 F.3d 828, 834 (9th Cir. 2018)………………………….……………..7, 8, 13, 14
.

*Rendell-Baker v. Kohn,*
    457 U.S. 830 (1982)…………………………………………………………………...19

*Roth v. United States,*
    354 U.S. 476, 484 (1957)………………………………………………………...19

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.,*
    502 U.S. 105 (1991)…………………………………………………………..19

*Sutton v. Providence St. Joseph Medical Center,*
    192 F.3d 826 (9th Cir. 1999)……………………………………………….passim

*Theatre Enters., Inc. v. Paramount Film Distrib. Corp.,*
    346 U.S. 537 (1954)……………………………………………,………24

*United Nat. Maint., Inc. v. San Diego Conv. Ctr., Inc.,*
    766 F.3d 1002, 1006 (9th Cir. 2014)…………………………………………18

- 4 -

*Verizon Del., Inc. v. Covad Communs. Co.*,
    377 F.3d 1081, 1091 (9th Cir. 2004)……………………………………………14

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097, 1110 (9th Cir. 2003)……………………………………………7

*Williams v. Rhodes*,
    393 U.S. 23 (1968)………………………………………….………………...19

*Wright v. City of Garland*,
    No. 3:10-CV-1852-D, 2014 U.S. Dist. LEXIS 52440 (N.D. Tex. Apr. 16, 2014)…...26

**State Cases**

*1-800-Got Junk? LLC v. Superior Court*,
    189 Cal. App. 4th 500, 512-13 (2010)…………………………………………16.

*Charles C. Chapman Bldg. Co. v. California Mart*,
    2 Cal. App. 3d 846, 853 (Cal. App. 2d Dist. 1969)…………………………………17

*Consumers Int'l v. Sysco Corp.*,
    91 Ariz. 32, 37-38, 951 P.2d 897(Ct. App. 1997)

*Dalton v. Educ. Testing Serv.*,
    87 N.Y.2d 384, 639 N.Y.S.2d 977, 663 N.E.2d 289 (1995)……………………..…15

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*,
    2007 NY Slip Op 5410, 41 A.D.3d 269, 838 N.Y.S.2d 536
    (App. Div. 1st Dept.)……………………………………………………..…..15

*Murphy v. Am. Home Prods. Corp.*,
    58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)……………………….15

*Rawlings v. Apodaca*,
    151 Ariz. 149, 153, 726 P.2d 565 (1986)…………………………………………...16

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*,
    309 A.D.2d 288, 765 N.Y.S.2d 575 (App. Div. 1st Dept. 2003)…………………….....15

*Sw. Sav. & Loan Ass'n v. SunAmp Sys.*,
    172 Ariz. 553, 558-59, 838 P.2d 1314 (Ct. App. 1992)………………………………...16

*Varian Med. Sys., Inc. v. Delfino*,
    35 Cal. 4th 180, 192 (2005)………………………………………………………7

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons
    Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 491, 38 P.3d 12 (2002)………………16

**Constitution**

U.S. Const. amend I…………………………………………………………,,…..passim

U.S. Const amend XIV……………………………………………………..…19

- 5 -

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO
DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

**Federal Statues and Rules**

F. R. Civ. Proc. 8……………………………………………………………..…passim

F. R. Civ. Proc. 12(b)…………………………………….…………….…….…….…..7, 8

F. R. Civ. Proc. 9(b)……………………………………………….……...…….…18, 22, 25

**Other Authorities**

Wright & Miller, Federal Practice and Procedure § 1224 ……………………………………...25

Steven J. Burton, *Breach of Contract and the Common Law Duty
to Perform in Good Faith*, 94 Harv.L.Rev. 369 (1980)…………………………………………16

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO
DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

I. **INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant Clear Channel Outdoor, LLC. ("Clear Channel")[1] and London Breed in her official capacity as Mayor of San Francisco[2] have filed motions pursuant to § 425.16 of the California Code of Civil Procedure (hereinafter "anti-SLAPP") to dismiss the state law causes of action asserted against them in the First Amended Complaint ("FAC").  Defendants' Motions are made on the pleadings and are therefore subject to the standards applicable to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

The anti-SLAPP statute applies a two-step process to determine whether an action should be dismissed: first, defendant "must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech," *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003), and, second, the burden shifts to the plaintiff to demonstrate "a probability of prevailing on the claim." *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005).

Plaintiffs do not dispute the first element under the anti-SLAPP statute. However, Plaintiffs submit the Motions at issue should be denied because plaintiffs can establish a probability of prevailing on the merits. *Varian*, 35 Cal 4th at 192. Because the Motions at issue are subject to Rule

---

[1] Plaintiffs have voluntarily dismissed defendant Clear Channel Outdoor Holdings, Inc. (Document .

[2] The Complaint in this matter states claims against London Breed as a party defendant in her personal capacity. However, the motion under consideration was filed on behalf of London Breed in her official capacity as Mayor of San Francisco. London Breed in her official capacity and London Breed in her personal capacity are distinct juridical persons. *See Hafer v. Melo*, 502 U.S. 21, 25. The anti-SLAPP motion to dismiss filed on behalf of London Breed in her official capacity is therefore not filed on behalf of the actual party defendant London Breed. Plaintiffs submit that for this reason, the anti-SLAPP Motion filed by Mayor London Breed in her official capacity cannot serve as a basis for dismissal of the state law causes of action asserted against defendant Breed in this matter. Nevertheless, plaintiffs will address on their merits the arguments set forth in the Motion, and in so doing for ease of reference, no distinction will be made to the capacity in which the Motion was filed, except where this issue is directly addressed in greater depth in the argument that follows.

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

1   12 (b) (6), plaintiffs' burden is to show that the FAC states a claim with respect to the state law

2   claims at issue. *Planned Parenthood*, 890 F.3d at 834.

3        The issues presented by both Motions depend principally on whether the FAC states claims

4   for violations of plaintiffs' First Amendment rights. Clear Channel contends that the Second Cause

5   of Action, for breach of contract for removing plaintiff's billboards, fails to state a claim because its

6   contract to provide billboards allowed Clear Channel to remove the billboards for any reason or no

7   reason.

8        Defendant Breed contends that the Third Cause of Action, for inducing breach of contract

9   fails to state a claim against her for the same reason: there was no breach of contract supporting this

10  claim because Clear Channel and defendant OutFront Media, Inc. ("OutFront") retained the right

11  under their respective contracts to remove plaintiffs' billboards for any reason or no reason.

12  ("Media Defendants" as used herein refers collectively to defendants OutFront and Clear Channel.)

13       Plaintiffs dispute defendants' contention that the FAC fails to state claims for breach of the

14  contracts. Plaintiffs' contracts with the Media Defendants were both subject to covenants of good

15  faith and fair dealing. *See infra* Section III B. The Media Defendants breached these covenants

16  because the Media Defendants' respective removals of plaintiffs' billboards were in violation of

17  plaintiffs' First Amendment rights. *See infra* Section III B.

18       Defendant Breed contends that the Third Cause of Action fails to state a claim for the

19  additional reason that her actions as alleged in the FAC were not wrongful and unjustified.

20  Relatedly, she contends that the Fourth Cause of Action fails to state a claim against her because her

21  actions as alleged in the FAC did not lack sufficient justification.

22       Plaintiff disputes these contentions on the basis that defendant Breed's actions as alleged in

23  the FAC in causing the removal of plaintiffs' billboards violated plaintiffs' First Amendment

24  Rights.  *See infra* Section III E. For this reason her actions in causing the removal of plaintiffs'

25  billboards was wrongful and unjustified for purposes of the Third and Fourth Causes of Action.

26       Defendant Breed contends that the Third and Fourth Causes of Action fail to state claims for

27  the additional reason that the FAC fails to adequately allege that she had the requisite knowledge

28

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

1   and intent. Plaintiffs dispute this on the grounds that these matters may be pleaded generally under

2   Rule 9(b), F. R.C. P.  *Guar. Residential Lending, Inc. v. Int'l Mortg. Ctr., Inc*., 305 F. Supp. 2d 846,

3   853 (N.D. Ill. 2004); *HIJ Indus. v. Roy (In re Roy)*, 547 B.R. 760, 765 (Bankr. E.D. Ky. 2016).

4         **II.**      **<u>THE FIRST AMENDED COMPLAINT</u>**

5         At the time of the events at issue in this matter plaintiff Ellen Lee Zhou was a candidate for

6   the office of Mayor of San Francisco, California in the election held in November 2019. (FAC ¶

7   13.) Plaintiff AAFPAC is an independent expenditure committee which promotes issues of

8   community importance to the voters and citizens of San Francisco. (*Id*. ¶ 14.)

9         Defendant Clear Channel is a for-profit limited liability company organized under the laws

10  of the State of Delaware with its principal place of business in the State of Texas. (*Id*. ¶ 14.)

11        Defendant OutFront Media, Inc. ("Out Front") is a for-profit corporation incorporated under

12  the laws of the State of California with its principal place of business in the State of California. (*Id*.

13  ¶ 17.)

14        At the time of the events at issue in this matter defendant London Breed was the interim

15  Mayor of San Francisco and was a candidate for the office of Mayor of San Francisco. (*Id*. ¶ 18.)

16        On or about October 1, 2019, in connection with her candidacy and campaign for the office

17  of Mayor of San Francisco, plaintiff Zhou entered into a written contract with defendant OutFront

18  to purchase billboard advertisements to be posted in San Francisco. (*Id*. ¶ 20.)

19        On or about September 30, 2019 plaintiff AAFPAC entered into a written contract with

20  Clear Channel to purchase billboard advertisements to be posted in San Francisco promoting its

21  views on political issues of interest to the voters and citizens of San Francisco. (*Id*. ¶ 22.) Plaintiff

22  AAFPAC performed all its obligations under the contract with Clear Channel, and all conditions of

23  such contract were satisfied. (*Id*. ¶ 23.)

24        Plaintiffs submitted the content of the billboards advertisements they wished to post to the

25  Media Defendants. Plaintiffs changed one or more of the proposed billboard advertisements in order

26  to obtain approval of the billboard advertisements from the Media Defendants. (*Id*. ¶ 24.) Approval

27  of the proposed billboard advertisements was communicated to plaintiffs in writing. (*Id*.)

28

1    Following the approval of the billboard advertisements the Media Defendants posted the

2    approved billboard advertisements in San Francisco in or about October 2019. (*Id.* ¶ 25.)

3    Soon after the posting of the plaintiffs' billboards, defendant Breed and her political allies[3],

4    began a concerted effort to pressure the Media Defendants to remove plaintiffs' billboards. (*Id.* ¶

5    26.) This concerted effort to apply pressure to the Media Defendants to remove the billboards was

6    based solely on the content of such billboards and was intended to censor and silence plaintiffs'

7    exercise of their core First Amendment right to engage in political speech. (*Id.*) The campaign to

8    pressure the Media Defendants to remove plaintiffs' billboards consisted of a gratuitous, malicious,

9    unwarranted, and widely publicized campaign to denounce the plaintiffs' billboards as offensive,

10   racist and divisive; this campaign focused primarily on a billboard posted at the corner of Dore and

11   Howard Streets advocating Zhou's candidacy for Mayor of San Francisco. (*Id.*)

12   The gratuitous, malicious, and unwarranted campaign to denounce plaintiffs' billboards

13   included a widely publicized press conference which was conducted on October 21, 2019 in front of

14   the billboard located at the corner of Dore and Howard Streets in San Francisco. (*Id.* ¶ 27.)

15   Although defendant Breed did not attend the October 21, 2019 press conference, the time, place and

16   purpose of the press conference was announced to members of the media and others via so-called

17   Media Advisory issued by defendant Breed's campaign for Mayor of San Francisco.  (*Id.* ¶ 28.)

18   Matt Haney, Aaron Peskin, Sandra Lee Fewer and Vallie Brown, all Members of the Board

19   of Supervisors for San Francisco (collectively "Supervisors"), and David Chiu, a California State

20   Assemblyman,  attended the October 21, 2019 press conference. (*Id.* ¶ 29.) Chiu and one or more of

21   the Supervisors spoke at the press conference and made statements or gave interviews to print and

22   broadcast media outlets denouncing the content of the billboard located at the corner of Dore and

23   Howard Streets in San Francisco. (*Id.*) Defendant Breed gave one or more media interviews

24

25

----

26   [3] Matt Haney, Aaron Peskin, Sandra Lee Fewer and Vallie Brown, all Members of the Board of
27   Supervisors for San Francisco (collectively "Supervisors"), David Chiu, a California State
     Assemblyman, and Malia Cohen, Chair of the California Board of Equalization. (*Id.* ¶ 6.)

28
MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO
DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

1    denouncing such billboard. (*Id.*)

2          The gratuitous, malicious, and unwarranted campaign to censor and silence plaintiffs'

3    exercise of their core First Amendment right to engage in political speech was thereby implemented

4    through widely reported news accounts in the San Francisco news media calculated to bring

5    pressure on the Media Defendants to remove plaintiffs' billboards. (*Id.* ¶ 30.)

6          The participants in the October 21, 2019 press conference were reported by the San

7    Francisco Chronicle as "denounc[ing the billboard], condemning it as a throwback to Jim Crow-era

8    propaganda and *calling for its removal*." (Emphasis added.) (*Id.* ¶ 31.) Chiu was reported by the San

9    Francisco Chronicle as stating at the press conference that the billboard was, "'a vile and

10    reprehensible political ad that is invoking racist, misogynistic and sexist perspectives.'" (*Id.* ¶ 32.)

11    Chiu was reported by a San Francisco television station news department as stating at the press

12    conference that, "[w]e are all standing untied to denounce this….[T]his sort of political rhetoric has

13    no place in San Francisco, no place in America." (*Id.* ¶ 33.) Cohen was reported by a San Francisco

14    television station news department as making a statement at the press conference that characterized

15    the billboard as "using racism and leveraging it for your own benefit." (*Id.* ¶ 34.) Supervisor Haney

16    was reported by a San Francisco television station news department as stating that the "[the

17    billboard] should have no place in this neighborhood" and as characterizing the billboard as hate.

18    (*Id.* ¶ 35.)

19          During an interview with a San Francisco television station news department reported on

20    October 21, 2019 defendant Breed stated that the billboard posted at the corner of Dore and Howard

21    Streets "is hurtful, it's disrespectful and it is no place [sic], I think in San Francisco for that kind of

22    divisiveness." (*Id.* ¶ 36.)

23          The aforementioned campaign of gratuitous, malicious, and unwarranted denunciation of

24    plaintiffs' billboards was based on the content of such billboards and was undertaken under color of

25    state law to censor and silence plaintiffs in the exercise of their core First Amendment right to

26    engage in in political speech.  (*Id.* ¶ 37.)

27          The day following the October 21, 2019 press conference the billboard at the corner of Dore

28

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO
DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

1   and Howard Streets was taken down, and within days the Media Defendants removed the remaining

2   billboards they had posted pursuant to their contracts with plaintiffs. (*Id*. ¶ 38.)

3       The Media Defendants are large commercial enterprises which derive substantial revenue

4   from conducting business in San Francisco and elsewhere in California. (*Id*. ¶ 42.) The Media

5   Defendants' business interests are subject to extensive regulation by San Francisco and the State of

6   California. (*Id*. ¶ 43.) For this reason, the Media Defendants are vulnerable to political pressure

7   from elected officials to censor billboard advertisements. (*Id*.)

8       The aforementioned campaign of gratuitous, malicious, and unwarranted denunciation of

9   plaintiffs' exercise of their core First Amendment right to engage in political speech was undertaken

10  under color of state law to take advantage of the ability of defendant Breed and her political allies to

11  exert pressure on the Media Defendants to censor billboard advertisements. (*Id*. ¶ 44.)

12      The aforementioned campaign of gratuitous, malicious, and unwarranted denunciation of

13  plaintiffs' exercise of their core First Amendment right to engage in political speech was undertaken

14  under color of state law to encourage and pressure the Media Defendants to remove plaintiffs'

15  billboard advertisements and to deprive plaintiffs of the ability to express their political views

16  through an inexpensive and effective medium. (*Id*. ¶ 45.)

17      The aforementioned campaign of gratuitous, malicious, and unwarranted denunciation of

18  plaintiffs' exercise of their core First Amendment right to engage in political speech was undertaken

19  under color of state law based on the content of plaintiffs' speech expressed in the billboards posted

20  on their behalf by the Media Defendants. (*Id*. ¶ 45.)

21      On information and belief, the Media Defendants removed plaintiffs' billboards and refused

22  to do further business with plaintiffs in response to the encouragement and pressure exerted on them

23  by the aforementioned campaign of gratuitous, malicious, and unwarranted denunciation of

24  plaintiffs' exercise of their core First Amendment rights conducted by defendant Breed and her

25  political allies and the Media Defendants must be deemed to have acted jointly with defendant

26  Breed in the intentional violation of plaintiffs' First Amendment Rights. (*Id*. ¶ ¶ 10, 46.)

27      The Media Defendants materially breached their contracts with plaintiff Zhou and plaintiff

28

AAFPAC by removing the billboard advertisements they had agreed to provide. (*Id.* ¶¶ 2, 3, 10, 13, 18, 20-47, 50, 51.) Plaintiffs were damaged by the Media Defendants' material breach of such contracts. (*Id.* ¶¶ 10, 38, 46, 50, 52.) The Media Defendants' material breach of plaintiffs' contracts was substantial factor in causing plaintiffs' harm.  (*Id.* ¶¶ 10, 38, 46, 50, 53.)

Defendant Breed knew plaintiffs had contracts with the Media Defendants. (*Id.* ¶¶ 2, 3, 10, 13, 18, 20-46, 54, 55.) Defendant Breed intended to cause the Media Defendants to breach such contracts. (*Id.* ¶¶ 2, 3, 10, 13, 18, 20-46, 54, 56.) The conduct of defendant Breed caused the Media Defendants to breach such contracts. (*Id.* ¶¶ 2, 3, 10, 13, 18, 20-46, 54, 57.) Plaintiffs were harmed by defendant Breed's efforts to induce the Media Defendants to breach such contracts. (*Id.* ¶¶ 10, 38, 46, 54, 58.) The conduct of defendant Breed was a substantial factor in causing plaintiffs' harm. (*Id.* ¶¶ 10, 20-47, 54, 59.)

The conduct of defendant Breed prevented the Media Defendants from performing their contracts with plaintiffs and made the performance of such contracts more difficult or expensive for the Media Defendants. (*Id.* ¶¶ 10, 20-47, 60, 61.) Plaintiffs were harmed by defendant Breed's interference with the Media Defendants' performance of such contracts. (Id. ¶¶ 10, 38, 46, 60, 62.) The conduct of defendant Breed was a substantial factor in causing plaintiffs' harm. (*Id.* ¶¶ 10, 20-47, 60, 63.)

## III.   LAW AND ARGUMENT

### A.    PROCEDURES UNDER CCP § 425.16 IN THE FEDERAL COURTS

When an anti-SLAPP motion challenges only the legal sufficiency of a claim, a district court should apply the Rule 12(b)(6) standard and consider whether a claim is properly stated; when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, the standards under Rule 56 apply. *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). In defending against an anti-SLAPP motion, if the defendants have urged only insufficiency of pleadings, then the plaintiff can properly respond merely by showing sufficiency of pleadings, and there is no requirement for a plaintiff to submit evidence to oppose contrary evidence that was never presented by defendants. *Id.*

1    Under Rule 12 (b) (6), when a motion to dismiss is granted, the court may in its discretion

2  grant leave to amend. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

3  Leave to amend may be denied on grounds of "'undue delay, bad faith or dilatory motive on the part

4  of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

5  prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

6  amendment.'" *Id.* (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)). The policies regarding

7  amendment of pleadings are applicable to an anti-SLAPP motion based on insufficiency of the

8  pleadings. *Verizon Del., Inc. v. Covad Communs. Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

9    The automatic stay on discovery provided in § 425.16 (g) is inconsistent with the provisions

10  of Rule 56 and is not applicable to motions to strike pursuant to § 425.16 filed in federal court based

11  on insufficient factual support for the claim. *Metabolife Int'l v. Wornick*, 264 F.3d 832, 846 (9th Cir.

12  2001). When an-anti-SLAPP motion challenges the factual sufficiency of a claim, discovery must

13  be allowed, with opportunities to supplement evidence based on the factual challenges, before any

14  decision is made by the court.  *Planned Parenthood*, 890 F.3d at 834.

15    **B.    SECOND CAUSE OF ACTION**

16    The Second Cause of Action alleges that the Media Defendants materially breached their

17  contracts with plaintiffs by removing plaintiffs' billboards. (FAC ¶¶ 2, 3, 10, 13, 18, 20-47, 50, 51.)

18  Movants contends that the Second Cause of action fails to state a claim for breach of contract

19  because under the terms of plaintiffs' contracts with the Media Defendants, the Media Defendants

20  reserved the right to remove plaintiffs' billboards for any reason or no reason.  This argument is

21  unavailing because the Media Defendants' contracts with plaintiffs were subject to covenants of

22  good faith and fair dealing as matter of law, and the FAC alleges facts sufficient to state claims that

23  the Media Defendants breached their respective covenants of good faith and fair dealing. (FAC ¶¶ 2,

24  3, 10, 13, 18, 20-46, 50, 51.)

25    Clear Channel contracted with plaintiff Asian American Freedom Political Action

26  Committee ("AAFPAC") to provide billboards to AAFPAC. (FAC ¶ 3.) AAFPAC agrees with

27  Clear Channel that this contract is governed by New York law. Under New York law, Clear

28

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO
DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

1    Channel's contract with AAFPAC was subject to a covenant of good faith and fair dealing as matter

2    of law. *See Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389, 639 N.Y.S.2d 977, 979-80, 663

3    N.E.2d 289, 291-92 (1995); *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 312-13, 461

4    N.Y.S.2d 232, 242, 448 N.E.2d 86, 96 (1983); *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A.,*

5    *Inc.*, 2007 NY Slip Op 5410, ¶¶ 1-2, 41 A.D.3d 269, 270, 838 N.Y.S.2d 536, 538 (App. Div. 1st

6    Dept.); *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 302, 765 N.Y.S.2d 575,

7    587 (App. Div. 1st Dept. 2003).

8        The covenant of good faith and fair dealing constrained Clear Channel's otherwise

9    unfettered discretion to remove plaintiff AAFPAC's billboards. *See Murphy*, 58 N.Y.2d at 312, 448

10   N.E.2d at 96 (holding covenant of good faith and fair dealing extends to right to terminate contract

11   at will). Clear Channel was not permitted to remove plaintiff's billboards for an arbitrary or

12   irrational reason. *See Dalton*, 87 N.Y.2d at 389, 663 N.E.2d at 291-292 (holding covenant of good

13   faith and fair dealing precludes the arbitrary or irrational exercise of discretion); *Maddaloni*

14   *Jewelers*, 2007 NY Slip Op 5410, ¶ 2, 41 A.D.3d at 270, 838 N.Y.S.2d at 538 (same); *Richbell*, 309

15   A.D.2d at 302, 765 N.Y.S.2d at 587 (same).

16       The FAC alleges that the Media Defendants' removal of plaintiffs' billboards was done in

17   response to pressure and encouragement from state actors. (FAC ¶¶ 10, 44-47.) As set forth in

18   Section III E, *infra*, the allegations of the FAC and the inferences that can be drawn from those

19   allegations state a claim that the Media Defendants are therefore liable for violating plaintiffs' core

20   First Amendment rights by reason of their respective removals of plaintiffs' billboards. Clear

21   Channel's removal of AAPAC's billboards was therefore an arbitrary exercise of its contractual

22   right to remove the billboards in breach of the covenant of good faith and fair dealing in Clear

23   Channel's contract with AAFPC. *Dalton*, 87 N.Y.2d at 389, 663 N.E.2d at 291-292 *Murphy*, 58

24   N.Y.2d at 312, 448 N.E.2d; *Maddaloni Jewelers*, 2007 NY Slip Op 5410, ¶ 2, 41 A.D.3d at 270,

25   838 N.Y.S.2d at 538; *Richbell*, 309 A.D.2d at 302, 765 N.Y.S.2d at 587.

26       The same analysis applies with respect to OutFront's contract to provide billboards to

27

28

- 15 -

1  plaintiff Zhou. (FAC ¶ 2.)  OutFront's contract with plaintiff Zhou is governed by Arizona law.[4]

2  (FAC Ex. A, ¶ 7).  Arizona law recognizes a covenant of good faith and fair dealing implied in

3  every contract. *Rawlings v. Apodaca*, 151 Ariz. 149, 153, 726 P.2d 565 (1986).

4         A party may breach its implied duty of good faith and fair dealing without breaching an

5  express covenant in the contract. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons*

6  *Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 491, 38 P.3d 12 (2002). "The good faith

7  performance doctrine may be said to permit the exercise of discretion for any purpose -- including

8  ordinary business purposes -- reasonably within the contemplation of the parties. A contract thus

9  would be breached by a failure to perform in good faith if a party uses its discretion for a reason

10 outside the contemplated range -- a reason beyond the risks assumed by the party claiming a

11 breach." *Sw. Sav. & Loan Ass'n v. SunAmp Sys.*, 172 Ariz. 553, 558-59, 838 P.2d 1314 (Ct. App.

12 1992) (*quoting* Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in*

13 *Good Faith*, 94 Harv.L.Rev. 369, 385-86 (1980) (footnotes omitted)).  *See also Consumers Int'l v.*

14 *Sysco Corp.*, 191 Ariz. 32, 37-38, 951 P.2d 897 (Ct. App. 1997).

15        OutFront's removal of plaintiff Zhou's billboards in violation of her First Amendment

16 rights, *see infra* Section III E, was neither in good faith, *Wells Fargo*, 201 Ariz. At 491; *Rawlings*,

17 151 Ariz. at 153; *Consumers Int'l1*, 91 Ariz. at 37-38, nor within the range of risks assumed under

18 the parties' contract. *SunAmp Sys.*, 172 Ariz. 553 at 558-559.

19 Plaintiffs submit that that the allegations of the FAC are sufficient to provide Movants fair notice of

20 plaintiffs' claims for breach of contract and the grounds upon which they rest. *See Bell Atl. Corp. v.*

21 *Twombly,* 550 U.S. 544, 555 (2007). Should the court conclude that the FAC was required to

22

———————————————

23 [4] Choice of law clauses in contracts are enforceable under California law unless (a) the designated

24 forum has no substantial relationship to the parties or the transaction and there is no other
reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be

25 contrary to a fundamental policy of a state which has a materially greater interest than the chosen

26 state in the determination of the particular issue and which would be the state of the applicable law
in the absence of an effective choice of law by the parties. *1-800-Got Junk? LLC v. Superior Court*,

27 189 Cal. App. 4th 500, 512-13 (2010). Neither exception is applicable to the choice of law
provision in the contract between OutFront and plaintiff Zhou.

28
                                                    - 16 -

1  specifically allege that the Media Defendants breached their covenants of good faith and fair

2  dealing, plaintiffs submit they should be granted leave to amend. *See Leadsinger, Inc. v. BMG*

3  *Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

4      **C.    THIRD CAUSE OF ACTION**

5      Plaintiffs' Third Cause of Action asserts a claim against defendant Breed for inducing breach

6  of contract. To state a claim for inducing breach of contract, plaintiffs must allege that "(1) [they]

7  had a valid and existing contract; (2) the defendant had knowledge of the contract and intended to

8  induce its breach; (3) the contract was in fact breached by the other contracting party; (4) the breach

9  was caused by defendant's wrongful and unjustified conduct; and (5) that plaintiff[s] suffered

10 damage." *Charles C. Chapman Bldg. Co. v. California Mart*, 2 Cal. App. 3d 846, 853 (Cal. App. 2d

11 Dist. 1969).

12     Defendant Breed contends that the Third Cause of Action fails to state a claim because the

13 FAC fails to allege facts that would support a claim that there was an actual breach of plaintiffs'

14 respective contracts with the Media Defendants. *California Mart*, 2 Cal. App. 3d at 853. Defendant

15 Breed contends that the breaches alleged in the FAC, the Media Defendants' removal of plaintiffs'

16 billboards, did not breach the respective contracts because the plaintiffs' contracts with the Media

17 Defendants allowed the Media Defendants to remove plaintiffs' billboards for any reason or no

18 reason. However, as set forth above, *see supra* Section III B, the FAC states claims for breach of

19 contract based on the Media Defendants' breaches of the covenant of good faith and fair dealing in

20 their respective contracts. The breach of contract element of Cause of Action Three, *California*

21 *Mart*, 2 Cal. App. 3d at 853, is therefore alleged in the FAC.

22     Defendant Breed contends that the Third Cause of Action fails to state a claim for the

23 additional reason that her actions as alleged in the FAC were not wrongful and unjustified.

24 *California Mart*, 2 Cal. App. 3d at 853. This claim is without merit. The FAC states a claim that

25 defendant Breed violated plaintiffs' First Amendment rights by encouraging and pressuring the

26 Media Defendants to suppress plaintiffs' political speech by removing plaintiffs' billboards. *See*

27 *infra* Section III E.  The FAC therefore alleges the required element of wrongful and unjustified

28

1    conduct in inducing the Media Defendants to breach plaintiffs' contracts. *California Mart*, 2 Cal.

2    App. 3d at 853.

3        Defendant Breed contends that the Third Cause of Action fails to state a claim for the

4    additional reason that the FAC fails to adequately allege that she had the requisite knowledge and

5    intent. Plaintiffs dispute this on the ground that these matters may be pleaded generally under Rule

6    9(b), F. R.C. P.  Malice, intent, knowledge, and other condition of mind of a person may be averred

7    generally. *Guar. Residential Lending, Inc. v. Int'l Mortg. Ctr., Inc.*, 305 F. Supp. 2d 846, 853 (N.D.

8    Ill. 2004); *HIJ Indus. v. Roy (In re Roy)*, 547 B.R. 760, 765 (Bankr. E.D. Ky. 2016).

9        **D.    FOURTH CAUSE OF ACTION**

10        Plaintiffs' Fourth Cause of Action asserts a claim against defendant Breed for intentional

11    interference with contract rights. To state a claim for intentional interference with contract rights

12    plaintiffs must allege (1) a valid contract between plaintiff and a third party; (2) defendant's

13    knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption

14    of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and

15    (5) resulting damage. *United Nat. Maint., Inc. v. San Diego Conv. Ctr., Inc.*, 766 F.3d 1002, 1006

16    (9th Cir. 2014).

17        Defendant Breed contends that the Fourth Cause of Action fails to state a claim because her

18    actions as alleged in the FAC were not wrongful and unjustified.  *California Mart*, 2 Cal. App. 3d at

19    853. This argument is without merit. The FAC states a claim that defendant Breed violated

20    plaintiffs' First Amendment Rights by encouraging and pressuring the Media Defendants to

21    suppress plaintiffs' political speech by removing plaintiffs' billboards. *See infra* Section III E.  The

22    FAC therefore alleges the required element of wrongful and unjustified conduct. *California Mart*, 2

23    Cal. App. 3d at 853.

24        Defendant Breed contends that the Fourth Cause of Action fails to state a claim for the

25    additional reason that the FAC fails to adequately allege that she had the requisite knowledge and

26    intent. Plaintiffs dispute this on the ground that these matters may be pleaded generally under Rule

27    9(b), F. R.C. P.  Malice, intent, knowledge, and other condition of mind of a person may be averred

28

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO
DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

1   generally. *Guar. Residential Lending, Inc. v. Int'l Mortg. Ctr., Inc.*, 305 F. Supp. 2d 846, 853 (N.D.

2   Ill. 2004); *HIJ Indus. v. Roy (In re Roy)*, 547 B.R. 760, 765 (Bankr. E.D. Ky. 2016).

3        **E.**    **DEFENDANTS' FIRST AMENDMENT VIOLATIONS**

4          The FAC alleges facts supporting a claim that defendants violated plaintiffs' First

5   Amendment Rights. Plaintiffs purchased billboards to promote political messages during the month

6   before the November 2019 election for the office of the Mayor of San Francisco. Moreover, it is

7   undisputed that the calls for removal of plaintiffs' billboards were directed to a specific billboard

8   promoting plaintiff Zhou's candidacy for Mayor of San Francisco. (*See* Document 25 (Defendant

9   Breed's Notice Motion and Supporting Memo) at 8, lines 10-17.[5]) Plaintiffs posting of the

10  billboards at issue was core First Amendment speech. "Indeed, the First Amendment 'has its fullest

11  and most urgent application' to speech uttered during a campaign for political office. *Monitor*

12  *Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971); *see also Mills v. Alabama*, 384 U.S. 214, 218 (1966)."

13  *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 223. All branches of both the state and

14  federal governments are obligated to honor the right to engage in political speech enshrined in the

15  First Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding First

16  Amendment applicable to states under Fourteenth Amendment).

17         It is of no consequence that many, or even most, people believe the views expressed in

18  plaintiffs' billboards racist, misogynistic, or otherwise reprehensible. "The fact that society may

19  find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's

20  opinion that gives offense, that consequence is a reason for according it constitutional protection."

21  *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 118 (1991)

22  (*quoting FCC v. Pacifica Foundation*, 438 U.S. 726, 745 (internal quotations omitted)). "Discussion

23  of public issues and debate on the qualifications of candidates are integral to the operation of the

24   

---

25  [5] Citations herein to "Documents" are to pleadings or papers in the record in this matter. Page

26  references in Documents are to the pagination created by the ECF system at the top of each page of

27  the Document.

28

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO
DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

1   system of government established by our Constitution. The First Amendment affords the broadest

2   protection to such political expression in order 'to assure [the] unfettered interchange of ideas for

3   the bringing about of political and social changes desired by the people.'" *Buckley v. Valeo*, 424

4   U.S. 1, 14, 96 S. Ct. 612, 632 (1976) (*quoting Roth v. United States*, 354 U.S. 476, 484 (1957)).

5   "Competition in ideas and governmental policies is at the core of our electoral process and of the

6   First Amendment freedoms." *Williams v. Rhodes*, 393 U.S. 23, 32 (1968).  "'The constitutional

7   right of free expression is . . . intended to remove governmental restraints from the arena of public

8   discussion,  putting the decision as to what views shall be voiced largely into the hands of each of

9   us . . . in the belief that no other approach would comport with the premise of individual dignity and

10  choice  upon which our political system rests.'" *Leathers v. Medlock*, 499 U.S. 439, 448-49 (1991)

11  (*quoting Cohen v. California*, 403 U.S. 15, 24 (1971)).

12      The FAC adequately pleads state action for purposes of plaintiffs' First Amendment claims.

13  The Media Defendants' liability for state action is based on the legal standards applicable for

14  finding state action when a private person (a non-state actor) is alleged to be liable for a

15  constitutional violation. The Court's decision in *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982)

16  demonstrates that the standard articulated in *Blum v. Yaretsky*, 457 U.S. 991 (1982), is applicable in

17  such a case. In *Rendell-Baker*, the Court relied principally on *Blum v. Yaretsky* in evaluating

18  whether a private school could be liable under § 1983. *Id*. at 839-842.

19      *Blum v. Yaretsky* articulated the following standard for establishing state action.

20   [A]lthough the factual setting of each case will be significant, our precedents indicate that a
21  State normally can be held responsible for a private decision only when it has exercised
    coercive power or has provided such significant encouragement, either overt or covert, that
22  the choice must in law be deemed to be that of the State.

23  *Blum*, 457 U.S. at 1004 (emphasis added).

24      That *Rendell-Baker v. Kohn* relied on *Blum* the issue of state action for a private defendant

25  undercuts the conclusion in *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826 (9th Cir.

26  1999), that something more than compulsion is required to establish state action for a claim against

27

28

- 20 -

1   a private defendant.

2          However, even if the "something more" standard from *Sutton* is applicable, plaintiffs can

3   establish something more under the standards set forth in *Sutton*. Although *Sutton* holds that a

4   private defendant cannot be found liable for state action when the private actor was compelled to

5   follow laws of general applicability, *Sutton* recognizes that a private defendant who has been

6   subject to compulsion by a state actor can be found liable for state action when the private actor was

7   compelled to take "a specific (allegedly unconstitutional) action against a specific person." *Sutton*,

8   192 F.3d at 843.

9          More importantly, however, all the other "compulsion" cases cited above ...like
10         the present case, involved generally applicable laws (or customs). In each case,
           the question was whether there was a sufficient nexus between the private entity
11         and the government's generally applicable requirement. In *Carlin*, on the other
           hand, the government directed a specific entity to take a specific (allegedly
12         unconstitutional) action against a specific person. Action of a private defendant
           performed pursuant to such "particularized state participation," *Carlin*, 827 F.2d
13         at 1295, is fairly attributable to the state, *cf. Blum*, 457 U.S. at 1004-05. We do
           not read *Carlin* as applying to cases such as this, which involve only generally
14         applicable laws.

15  *Sutton*, 192 F.3d at 843.

16         Plaintiffs further submit that there is no strict requirement for coercion or compulsion to find

17  state action when a the defendant is a private person. These terms are convenient for ease of

18  reference, as indicated by the quotation marks in the foregoing quoted passage from *Sutton*.

19  However, as set forth in the passage form *Blum* quoted above, compulsion is not the sole basis for

20  finding state action articulated in *Blum v. Yaretsky*. State action can also be predicated on

21  "significant encouragement, either overt or covert...." *Blum*, 457 U.S. at 1004.

22         The application of a strict compulsion test is also inconsistent with the recognition in *Sutton*

23  that "contemporary decisions stress the necessity of a close nexus between the state and the

24  challenged conduct rather than application of a mechanistic formula." *Sutton*, 192 F.3d 836

25  (citations and internal quotes omitted). This approach is manifested in the passage from *Sutton*

26  quoted above in which the court relied *Blum* as supporting a finding of state action in *Carlin*.

27

28
                                              - 21 -

1    *Sutton*, 192 F.3d at 836-837.[6]

2         The application of the so-called compulsion standard in the context of an overall nexus

3    analysis is more straightforward as to defendant Breed. Plaintiffs allege that defendant Breed was a

4    state actor, i.e., a person who is alleged to have violated the plaintiffs' rights under color of state

5    law. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). When a state actor is alleged to be liable for a

6    constitutional violation by reason of having encouraged or compelled a private party to engage in

7    unconstitutional conduct, *Blum* at 1003-1004, such actions "may be fairly treated as that of the State

8    itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (citation

9    omitted); *see also Sutton*, 192 F.3d at 836-837.

10        The FAC states a claim for state action against all defendants for violations of plaintiffs'

11   First Amendment rights under the foregoing legal standards. Recent decisions of the Supreme Court

12   do not undercut the well-established notice pleading requirements of the Federal Rules of Civil

13   Procedure. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the

14   claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

15   what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S.

16   544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   Plaintiff submits that the

17   FAC satisfies these requirements with respect to the issue of state action.

18        The FAC alleges that plaintiffs purchased billboards to promote political messages during

19   the month before the November 2019 election for the office of the Mayor of San Francisco and that

20   the billboards were posted in October 2019. (FAC ¶¶ 13, 20-25).  Thereafter defendant Breed, who

21   was then plaintiff Zhou's rival in an election for state office, (*id*. ¶ 18), promoted an October 21,

22   2019 press conference, (*id*. ¶ 28), during which state officials denounced the content of one of

23   plaintiffs' billboards as vile, reprehensible, racist, misogynistic, sexist and hateful. (*Id*. ¶ 32, 34).

24

25   _____

26   [6] *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1930 (2019) is another case in which

27   *Blum* was cited in a decision regarding a claim of state action asserted against a private defendant.

28

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO
DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

1  The FAC further alleges that statements by state officials at the press conference and in

2  media interviews expressed the view that, contrary to every First Amendment principle, plaintiffs'

3  political speech should not be allowed. The participants in the press conference were reported to

4  have called for the removal of the billboard. (*Id*. ¶ 31.) A state official was reported as stating that,

5  "this sort of political rhetoric has no place in San Francisco, no place in America." (*Id*. ¶ 33.)

6  Another state official was reported as stating that "[the billboard] should have no place in this

7  neighborhood." (*Id*. ¶ 35.)  During an interview with a San Francisco television station news

8  department reported on October 21, 2019 defendant Breed stated that there "is no place [sic], I think

9  in San Francisco for that kind of divisiveness." (*Id*. ¶ 36.) All of the foregoing denunciations and

10  calls for removal of the controversial billboard by state officials are alleged to have been widely

11  reported in news accounts. (Id. ¶ 30.)

12  Moreover, it is undisputed that foregoing widely publicized denunciation and calls for the

13  removal of plaintiff's billboard were directed to a specific billboard promoting plaintiff Zhou's

14  candidacy for Mayor of San Francisco. (See Document 25 at 8, lines 10-17.)

15  The foregoing allegations support an inference that the denunciation and calls for removal of

16  plaintiff's billboard at the October 21, 2019 press conference were made on behalf of defendant

17  Breed.  Plaintiff Zhou and defendant Breed were running against each other for political office.

18  (FAC ¶ 13, 18.) The billboard that was the subject of the October 21, 2019 press conference

19  promoted Zhou's campaign. (See Document 25, lines 10-17.) The FAC alleges that "the time, place

20  and purpose of the press conference was announced to members of the media and others via so-

21  called Media Advisory issued by defendant Breed's campaign for Mayor of San Francisco." (FAC ¶

22  28.)  Because the allegations of the FAC must be construed in the light most favorable to plaintiffs,

23  *Twombl*y, 550 U.S. at 570, these allegations support an inference that the denunciation and calls for

24  removal of plaintiff's billboard at the press conference and in media interviews were made on

25  behalf of defendant Breed. Indeed, they support an inference that this activity was organized and

26  orchestrated by defendant Breed.

27  The day following the widely publicized October 21, 2018 press conference, the billboard

28

- 23 -

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO
DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO

which was the subject of calls for removal by state officials was removed. (Id. ¶ 38.) Within days plaintiffs' remaining billboards were removed by the Media Defendants. (*Id.*) This action was taken almost immediately following the widely publicized denunciation and calls for removal of plaintiff's billboard by state officials orchestrated by defendant Breed. Moreover, this action was taken by two independent firms. (Id. ¶¶ 15, 17.)

Thus, the FAC alleges that two independent firms removed plaintiffs' billboards almost immediately following a widely publicized press conference in which state official vehemently denounced one of plaintiffs' billboards and called for its removal. This supports an inference that the Media Defendants removed plaintiffs' billboard in response to significant encouragement, either overt or covert, if not downright coercion, by defendant Breed and the political allies she enlisted. *Blum*, 457 U.S. at 1004-05.  That the Media Defendants are subject to regulation by the state actors who spoke out against plaintiffs' billboards, while not conclusive, also tends to support an inference that that the Media Defendants removed plaintiffs' billboards in response to significant encouragement, if not downright coercion, by defendant Breed and the political allies she enlisted. *Sutton,* 192 F.3d at 843.

These allegations would also support an inference that the Media Defendants removed the billboards in the independent exercise of their editorial judgement. However, under Rule 12 (b) (6), the allegations of the FAC must be construed in the light most favorable to plaintiffs. *Twombly*, 550 U.S. at 570. Moreover, this is not an implausible inference of the sort at issue in *Twombly*. 570 U.S. at 556. The inference on which plaintiffs rely is highly plausible. "All government displays an enduring tendency to silence, or to facilitate silencing, those voices that it disapproves." *Ark. Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 235 (1987) (Scalia, J., dissenting).

Neither do plaintiffs rely on economic theories of firm behavior that were once accepted but are currently discredited.  *Compare Twombly*, 570 U.S. at 556-557 (parallel conduct by independent firms without more cannot support an inference of conspiracy in violation of 15 U.S.C. § 1), *and Theatre Enters., Inc. v. Paramount Film Distrib. Corp*., 346 U.S. 537, 540-41 (1954) (parallel conduct of independent firms is circumstantial evidence of conspiracy in violation of 15 U.S.C. §

1). Plaintiffs rely on unquestioned and venerated doctrines of constitutional law that defendants themselves invoke in defense of their actions at issue.  And, with all due respect to the legitimate interests of defendants and the integrity of the Supreme Court, this case is in no way comparable to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which, had the Court not found that the allegations of the complaint at issue failed to state a claim, discovery would have gone forward on claims against the FBI director and a former attorney general, in their personal capacities, in a case brought by a convicted felon who had been detained on suspicion of terrorism and subsequently deported following the most deadly terrorist attack in U.S. history.

Moreover, any further facts that would support plaintiffs' claims are exclusively within defendants' knowledge. Imposing any greater pleading burden on plaintiffs cannot be justified in these circumstances. "[U]nder Rule 8, 'Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he [or she] has sufficient data  to justify interposing an allegation on the subject.'" *Hutchens v. Alameda Cty. Soc. Servs. Agency*, No. C-06-06870 SBA, 2008 U.S. Dist. LEXIS 69429, at *12-13 (N.D. Cal. Sep. 9, 2008) (quoting *Wright & Miller, Federal Practice and Procedure* § 1224 (2d ed. 1990).) The propriety of pleading on information and belief has even been recognized under the heightened pleading standard of Rule 9 (b) when the relevant facts are known exclusively to the defendant.  *See Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628, 646 (3d Cir. 1989); *Acosta Orellana v. Crop Life Intl.*, 711 F.Supp.2d 81, 98 (D.D.C. 2010).

Here, there can be no doubt that any further specific facts concerning the alleged violation of plaintiffs' First Amendment rights beyond those alleged in the FAC are "peculiarly" within the knowledge of defendants. *See Kowal v. MCI Communications Corp*., 1992 U.S. Dist. LEXIS 7437, *21 (D.D.C. No. 90-2862) (*citing Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986)). *See also*, *Bender v. Rocky Mountain Drilling Assocs*., 648 F. Supp. 330, 336 (D.D.C. 1986)). Given the fact that the FAC is subject to the notice pleading requirements of Rule 8, plaintiffs' allegations on

information and belief in this case are *a fortiori* appropriate.[7]

**F.   THE MOTION TO DISMISS FILED BY LONDON BREED IN HER OFFICIAL CAPACITY WAS NOT FILED BY A PARTY DEFENDANT**

There is no basis for dismissal of the state law cause of action as to defendant London Breed because no motion has been filed on behalf of defendant London Breed. An anti-SLAPP Motion was filed on behalf of London Breed in her official capacity as Mayor of San Francisco. However, London Breed in her official capacity and London Breed in her personal capacity are distinct juridical persons. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (*citing Kentucky v. Graham*, 473 U.S. 159, 166, 167 (1985)).

The FAC cannot be construed as having been filed against London Breed in her official Capacity. Defendant Breed is not named in her official capacity in the caption or any other place in the FAC. There is also no allegation that London Breed *is* the Mayor of San Francisco. The FAC alleges that at the time of the events in question, defendant Breed was the interim Mayor and was running for Mayor. (FAC ¶ 18.) But this is merely an allegation of fact, not capacity. An official capacity claim would be expected to be stated against defendant Breed in her current status.

Moreover, there are no allegations of an unconstitutional policy or practice in the FAC that would be required for an official capacity claim. Absent such allegations, there is no reasonable basis for construing the FAC as having named defendant Breed in her official capacity. *C.f. Hill v. Shelander,* 924 F.2d 1370, 1378 (7th Cir. 1991). *See also Wright v. City of Garland*, Civil Action No. 3:10-CV-1852-D, 2014 U.S. Dist. LEXIS 52440, at *17-18 (N.D. Tex. Apr. 16, 2014).

Because the anti-SLAPP Motion filed on behalf of London Breed in her official capacity was not filed by the actual party defendant London Breed, that Motion cannot serve as a basis for dismissal of the state law as to defendant Breed.

---

[7] Should the court conclude that plaintiffs were required to plead that any further facts supporting their claim are known exclusively to defendants and plead the factual basis for this contention, *see*, *e.g*., *Craftmatic*, 890 F.2d at  646; *Acosta*, 711 F.Supp.2d at 98, plaintiffs submit they should be granted leave to amend. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**IV.     CONCLUSION**

For the foregoing reasons, plaintiffs respectfully request that the court deny the Motions Dismiss pursuant to Cal. Code Civ. P. §425.16 filed of defendant Clear Channel Outdoor, LLC and Mayor London Breed in her official capacity as Mayor of San Francisco.

Dated:   April 8, 2020.                                   California Constitutional Rights Foundation

                                                                            /s/

                                                                    _____
                                                                     Steven C. Bailey
                                                                     Robert E. Williams
                                                                    Attorneys for Plaintiffs Ellen Lee Zhou and
                                                                    Asian America Freedom Political Action
                                                                    Committee

MEMORANDUM IN OPPOSITION TO LONDON BREED AND CLEAR CHANNEL OUTDOOR, LLC's MOTIONS TO DISMISS PURSUANT TO § 425.16 CAL. CODE CIV PROC.
Case 3:19-cv-07269-WHO