Brian J. Stretch, SBN 211350
bstretch@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA  94104
Telephone: +1 415 772 1200
Facsimile: +1 415 772 7400

*Attorneys for Defendants*
*Clear Channel Outdoor, LLC;*
*Clear Channel Outdoor Holdings, Inc.*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ELLEN LEE ZHOU, an individual, and ASIAN AMERICAN FREEDOM POLITICAL ACTION COMMITTEE,<br><br>Plaintiffs,<br><br>v.<br><br>LONDON BREED, CLEAR CHANNEL OUTDOOR, LLC, CLEAR CHANNEL OUTDOOR HOLDINGS, INC., OUTFRONT MEDIA, INC., and DOES 1-50,<br><br>Defendants. | Case No. 3:19-cv-07269-WHO<br><br>**DEFENDANTS' CLEAR CHANNEL OUTDOOR LLC, CLEAR CHANNEL OUTDOOR HOLDINGS, INC. REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:        May 6, 2020<br><br>Time:        2:00 PM<br><br>Location:    Courtroom 2 – 17th Floor<br>450 Golden Gate Ave., San Francisco, CA<br><br>Judge:       Hon. William H. Orrick, District Judge |

1
2

**TABLE OF CONTENTS**

3
4
5
6
7
8

ARGUMENT ...........................................................................................................................2

    I.      PLAINTIFFS FAIL TO PLEAD THAT CLEAR CHANNEL ENGAGED
          IN STATE ACTION OR IS A STATE ACTOR ...........................................................2

    II.     AAFPAC'S CONTRACT CLAIM MUST BE DISMISSED ...................................7

    III.    AAFPAC'S BREACH OF CONTRACT CLAIM SHOULD BE
          STRICKEN UNDER THE ANTI-SLAPP STATUTE.................................................9

CONCLUSION........................................................................................................................9

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
 531 U.S. 288 (2001)..................................................................................................4

*Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*,
 827 F.2d 1291 (9th Cir. 1987) ...........................................................................3, 5, 6

*In re Century Aluminum Co. Sec. Litig.*,
 729 F.3d 1104 (9th Cir. 2013) ...................................................................................6

*Jackson v. Metro. Edison Co.*,
 419 U.S. 345 (1974)...................................................................................................4

*Manhattan Cmty. Access Corp. v. Halleck*,
 139 S. Ct. 1921 (2019).......................................................................................passim

*Mathis v. Pac. Gas & Elec. Co.*,
 75 F. 3d 498 (9th Cir. 1996) ......................................................................................2

*Nasdaq, Inc. v. Exch. Traded Managers Grp., LLC*,
 No. 17 CIV. 8252 (PAE), 2019 WL 6977393 (S.D.N.Y. Dec. 20, 2019) ..................8

*Paxi, LLC v. Shiseido Americas Corp.*,
 636 F. Supp. 2d 275 (S.D.N.Y. 2009)........................................................................8

*Rendell-Baker v. Kohn*,
 457 U.S. 830 (1982)...............................................................................................4, 6

*Serdarevic v. Centex Homes, LLC*,
 760 F. Supp. 2d 322 (S.D.N.Y. 2010)........................................................................8

*Sutton v. Providence St. Joseph Med. Ctr.*,
 192 F.3d 826 (9th Cir. 1999) ..............................................................................passim

*Van Wagner Boston, LLC v. Davey*,
 770 F.3d 33 (1st Cir. 2014).........................................................................................7

**Other State Cases**

*City of New York v. Stapleton Studios, LLC*,
 798 N.Y.S.2d 343 (Civ. Ct. 2004) ............................................................................9

*Dalton v. Educational Testing Serv.*,
 87 N.Y.2d 384 (1995).................................................................................................8

*Lamar Advantage GP Co., LLC v. City of Cincinnati*,
   114 N.E.3d 805 (Ohio C.P. Hamilton County 2018) ...................................................... 7

*Murphy v. Am. Home Prod. Corp.*,
   58 N.Y.2d 293 (1983) ..................................................................................................... 8

*Ninth St. Assocs. v. 20 E. Ninth St. Corp.*,
   39 Misc. 3d 1239(A) (N.Y. Sup. Ct. 2013) .................................................................... 7

*P.T. & L. Contr. Corp. v. Trataros Contr., Inc.*,
   29 A.D.3d 763 (2006) ..................................................................................................... 7

*Robinson v. Oz Master Fund, Ltd.*,
   139 A.D.3d 639 (N.Y. App. Div. 2016) ......................................................................... 7

**Constitution**

U.S. Const. amend. I ..................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 1

Defendant Clear Channel Outdoor, LLC[1] ("Clear Channel") respectfully submits this Reply in support of Clear Channel's Motion to Dismiss ("Motion").  Dkt. No. 32.  As demonstrated in our Motion, the Amended Complaint ("Complaint") filed by Plaintiff Ellen Lee Zhou ("Zhou") and Plaintiff Asian American Freedom Political Action Committee ("AAFPAC", and together with Zhou, "Plaintiffs") fails to state any legally sufficient claim against Clear Channel.  Neither Plaintiffs' Opposition to Defendants' motions to dismiss pursuant to Rule 12(b)(6) ("MTD Opp."), Dkt. No. 35, nor Plaintiffs' Opposition to Defendants' motions to strike pursuant to California's anti-SLAPP law ("MTS Opp."), Dkt. No. 36, offers any basis to salvage the Complaint.

Plaintiffs' First Amendment claim fails because Clear Channel is a private entity.  To plead their claim, Plaintiffs must allege facts sufficient to show *both* that Clear Channel engaged in conduct attributable to the State as state action *and* that Clear Channel itself has a sufficiently close relationship with the State to make Clear Channel also liable as a state actor.  Plaintiffs have pled neither.  Plaintiffs recount at length a press conference and associated media reports decrying a political billboard posted for Plaintiff Zhou by Defendant OUTFRONT Media, and assert Clear Channel took down its different billboards posted for Plaintiff AAFPAC in response.  This falls far short of the mark on both elements.  First, Plaintiffs have not pled any sort of coercion, threat, or direction under color of state law to transform private action into state action.  Second, Plaintiffs have not pled any nexus to transform a private actor into a state actor.  Without such a showing, Plaintiffs' suit turns free speech law on its head by *requiring* a private actor to persist with speech it wishes to discontinue.

Plaintiff AAFPAC's contract claim similarly fails for the simple reason that its contract with Clear Channel expressly authorizes the challenged conduct.  Plaintiffs do not dispute the plain language of the agreement that authorized Clear Channel to remove the copy.  Rather, Plaintiffs propose an entirely new claim, that Clear Channel breached the implied covenant of good faith and fair dealing.  This also fails.  The implied covenant does not add, delete, or rewrite contract provisions, but rather supplies a rule of construction for parties' existing contract obligations.  Here, the implied

---

[1] Plaintiffs have filed a notice of dismissal as to Clear Channel Holdings, Inc.  *See* Dkt. No. 34.

CLEAR CHANNEL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:19-CV-07269-WHO

covenant cannot be used to cabin contract language that on its face grants Clear Channel unfettered discretion in removing billboard advertisements "for any reason or no reason at all."

Because Plaintiffs have failed to plead any legally viable claim, and because no amount of additional detail in a Second Amended Complaint would make these claims legally viable, the Complaint against Clear Channel should be dismissed with prejudice. Alternatively, Plaintiff's breach of contract claims should be struck under the California Anti-SLAPP statute.

## ARGUMENT

### I.   PLAINTIFFS FAIL TO PLEAD THAT CLEAR CHANNEL ENGAGED IN STATE ACTION OR IS A STATE ACTOR

Plaintiffs' response misconstrues First Amendment jurisprudence, the relevant pleading standard, and Plaintiffs' own allegations in service of a facially invalid claim that Clear Channel, a non-governmental entity, violated Plaintiffs' First Amendment rights. The Free Speech Clause "prohibits only *governmental* abridgement of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Plaintiffs allege that Clear Channel, a private entity, removed copy from its billboards in response to compulsion by City officials. In order to assert Section 1983 liability based on compulsion, Plaintiffs must plead two related showings: *first*, that the private actor engaged in *state action*; and *second*, that under the circumstances the private actor could itself be viewed as a *state actor*. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 837–38 (9th Cir. 1999). Plaintiffs have pled neither.

As to the first issue, the acts of private parties are "sparingly" treated as those of the government. *See Mathis v. Pac. Gas & Elec. Co.*, 75 F. 3d 498, 501 (9th Cir. 1996). Indeed, courts "start with the presumption that private conduct does not constitute governmental action." *Sutton*, 192 F.3d at 835. The Supreme Court has recognized that private action may be attributed to the state when the private actor (1) performs a traditional, exclusive public function; (2) is compelled by the

1
2
government to take a particular action; or (3) acts jointly with the government.  *See Manhattan Cmty.*, 139 S. Ct. at 1928.

3
4
5
6
7
8
9
10
11
12
Plaintiffs assert the second of these bases, that the Mayor and other public officials forced Clear Channel to remove the signs.  In *Blum v. Yaretsky*, the Supreme Court declined to find state action where the state did not "require," "dictate," or "command" the objected-to patient transfers.  457 U.S. 991, 1009–10 (1982).  Conversely, in *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291 (9th Cir. 1987), the Ninth Circuit did find compulsion where a state prosecutor ordered a heavily regulated utility to take unconstitutional action against a specific entity.  And in *Sutton*, the Ninth Circuit reviewed extensively the jurisprudential history of this "compulsion factor," and found government compulsion where the federal government required private employers to gather social security numbers in connection with the hiring process.  192 F.3d at 836–43.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
Notwithstanding the Ninth Circuit's clear formulation of the "compulsion" test, Plaintiffs devote much of their opposition to arguing that "compulsion" does not really mean compulsion, and urging the Court not to apply a "strict compulsion" test.  MTD Opp. at 16–18.  However one fashions the *Blum* standard—"compulsion" or "significant encouragement," MTD Opp. at 17—it does not exist here.  *See* 457 U.S. 991.  Plaintiffs repeatedly characterize a single press conference as a "gratuitous … campaign" to denounce Clear Channel's billboards.  MTD Opp. at 11–14.  But this characterization does not change the facts as pled: a single press conference, repeated in several news articles and press releases, attacking a different sign paid for by a different client and posted by a different billboard company.  At most, Plaintiffs have alleged campaign speech, electioneering, or just plain politics by Defendant Breed and other City officials, not state compulsion.  As noted in our Motion, and as not disputed by Plaintiffs, the Complaint does not identify any mandate, directive, order, threat of reprisal, financial burden, increased scrutiny, loss of city contracts, or any other actual repercussion for not removing the signs.  Plaintiffs have not pled anything to amount to

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

coercion or "significant encouragement."

Plaintiffs' only theory of coercion is that Clear Channel is "subject to regulation by state actors who spoke out against plaintiffs' billboards," which, they argue "tends to support an inference that [Clear Channel] removed plaintiffs' billboards in response to significant encouragement, if not downright coercion."  MTD Opp. at 21.  As an initial matter this overstates the pleadings.  The Complaint asserts that "[Clear Channel's] business interests are subject to extensive regulation by San Francisco and the State of California.  For this reason, [they] are vulnerable to political pressure from elected officials to censor billboard advertisements."  Compl. ¶ 43.  In their Opposition, Plaintiffs assert that Clear Channel is regulated by the precise "state actors who spoke out against plaintiffs' billboards."  MTD Opp. at 21.  That detail appears nowhere in the Amended Complaint.

Nor, however, would it matter.  Plaintiffs recognize their asserted inference is "not conclusive."  *Id.*  More than that, it is incorrect.  "[T]he 'mere existence' of a 'regulatory scheme'— even if 'extensive and detailed'—[does] not render the [private entity] a state actor."  *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1932.  Were the law otherwise, most private conduct, and essentially all business activity, would constitute state action.  *Sutton*, 192 F.3d at 838. Unsurprisingly then, the Supreme Court has repeatedly rejected this theory.  *E.g.*, *id.*; *Blum*, 457 U.S. at 1009; *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974).

Even if Plaintiffs could demonstrate a plausible inference that state officials compelled Clear Channel to remove the signs under color of state law, Plaintiffs would still have to plead facts sufficient to support holding Clear Channel liable as a state actor.  As the Supreme Court has made clear, only when there is a "close nexus between the State and the challenged action" may a private entity be liable as though it were the state.  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  As the Ninth Circuit explained in *Sutton*, in cases of state compulsion, "without some other nexus between the private entity and the government, we would expect that the

4
CLEAR CHANNEL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:19-CV-07269-WHO

private defendant is *not* responsible for the government's compulsion."  192 F.3d at 838.  Therefore, a plaintiff must plead and prove "something more," specifically "participation by the state in an action ostensibly taken by the private entity, through conspiratorial agreement, official cooperation with the private entity to achieve the private entity's goal, or enforcement and ratification of the private entity's chosen action."  *Id*. at 838–41.  Neither the Complaint nor the Opposition identifies anything to meet this exacting "something more" requirement.

Instead, Plaintiffs assert that *Sutton* concerned only "generally applicable" laws, and that instead *Carlin* should control this case.  MTD Opp. at 17.  As an initial matter, nothing in the later decision in *Sutton* restricts its reasoning to generally applicable laws.  *Sutton*'s presumption that a private entity is not culpable for action the state compels retains its force whether that compulsion is general or specific.  192 F.3d at 838.  "When the state compels a private party to [take action], it is the state action, not the private conduct, which is unconstitutional. … [A] private party in such a case is 'left with no choice of his own' and consequently should not be deemed liable."  *Id.*

Moreover, *Carlin* presented dramatically different circumstances.  As the Ninth Circuit explained, liability was appropriate in *Carlin* because both (1) the telephone company was a "heavily regulated public utility assuming quasi-monopolistic control over the message medium," and (2) "the government directed a specific entity to take a specific (allegedly unconstitutional) action against a specific person."  *Sutton*, 192 F.3d at 843.  Neither characteristic exists here.  Clear Channel is not a regulated, monopolistic, public utility.  Rather, Clear Channel is a private entity with its own First Amendment rights, which include the right to "exercise[e] editorial discretion over speech and speakers on [its] property."  *Manhattan Cmty. Acc.*, 139 S. Ct. at 1931.  Nor was there any order or directive under color of state law (let alone criminal law) that any specific party take

1
2
3
4

any specific action.[2]  Plaintiffs have pled nothing more than election-driven political grandstanding.  At bottom, *Carlin* is most relevant for showing what is missing from this case—state action under color of state law.  There, a state prosecutor ordered the phone company to cut off service to a particular business on pain of prosecution; Plaintiffs here plead no such compulsion.

5
6
7
8
9
10
11
12

Lastly, Plaintiffs argue that *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), undercuts *Sutton*'s "something more" understanding of compulsion.  *See* MTD Opp. at 16–17.  As an initial matter, *Sutton* post-dated *Rendell-Baker* by nearly two decades, and cited it in explaining the standards for state action.  *See* 192 F.3d at 835.  The Ninth Circuit's later understanding of the law thus controls for present purposes.  Moreover, *Rendell-Baker* has nothing to say about whether "something more" is required to hold a *private entity* liable for state action as that case concerned only whether a private actor's conduct was "fairly attributable to the State."  *See* 457 U.S. at 838.

13
14
15
16
17
18
19
20
21
22
23

Lacking facts or plausible inference to support their arguments, Plaintiffs ignore two decades of jurisprudential development and invoke a pleading standard from years gone by.  *See* MTD Opp. at 19, 22–23.  Contrary to Plaintiffs' argument, "*Iqbal* and *Twombly* moved us away from a system of pure notice pleading.  In addition to providing fair notice, the complaint's allegations must now suggest that the claim has at least a plausible chance of success."  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (citation omitted).  Plaintiffs have offered no plausible facts supporting a theory of government coercion, and this Court need not draw inferences unsupported by their allegations.

Lastly, while paying lip-service to Clear Channel's First Amendment rights, MTD Opp. at

24
25
26
27
28

---

[2] Though not determinative to the resolution of this motion, Clear Channel notes here that throughout Plaintiffs have treated Clear Channel and OUTFRONT Media as though they were a single entity—the "Media Defendants"—acting in unison and under the coercion of the government.  This is of course not the case, and further demonstrates the weakness in Plaintiffs' theory of liability.  Each is its own entity and own actor, exercising its own independent editorial discretion over what to publish pursuant to its own First Amendment rights.

14–16, Plaintiffs offer no response to our demonstration of how their case turns the First

Amendment on its head.  As a private media company, Clear Channel enjoys protected First

Amendment rights as both speaker and publisher.  *See Manhattan Cmty. Acc.*, 139 S. Ct. at 1931;

*Van Wagner Boston, LLC v. Davey*, 770 F.3d 33, 38–42 (1st Cir. 2014); *Lamar Advantage GP Co.,*

*LLC v. City of Cincinnati*, 114 N.E.3d 805, 815 (Ohio C.P. Hamilton County 2018).  Plaintiffs'

theory of compelled speech would deprive Clear Channel of its editorial discretion.  Contrary to

Plaintiffs' argument, for a private decision-maker, business, and publicly traded company it *is* "of []

consequence that many, or even most, people believe the views expressed in plaintiffs' billboards are

racist, misogynistic, and reprehensible."  MTD Opp. at 15.  Plaintiffs' would coerce Clear Channel

to continue displaying such speech against its will, a view that if accepted would violate Clear

Channel's rights and chill its willingness to accept any controversial speech at all.

For all the foregoing reasons, Plaintiffs' First Amendment claim should be dismissed with

prejudice.

## II.   AAFPAC'S CONTRACT CLAIM MUST BE DISMISSED

AAFPAC abandons any claim of express breach of contract and with good reason, as the

contract states unambiguously states that "Clear Channel, in its sole discretion, may reject or remove

any advertising material, art or copy, submitted by Customer for any reason or no reason at any time

during the term of this Contract."  *See* MTD Opp. at 23–25.

Instead, AAFPAC pivots to an unpled claim, breach of the implied covenant of good faith

and fair dealing.  This claim fares no better.  Under New York law, the covenant of good faith and

fair dealing is implicit in all contracts during the course of contract performance.  *See P.T. & L.*

*Contr. Corp. v. Trataros Contr., Inc.*, 29 A.D.3d 763, 764 (2006).  Importantly, "[t]he doctrine of the

covenant of good faith and fair dealing does not permit a party to add terms that alter the meaning of

the agreement."  *Ninth St. Assocs. v. 20 E. Ninth St. Corp.*, 39 Misc. 3d 1239(A) (N.Y. Sup. Ct.

2013).  *Accord Robinson v. Oz Master Fund, Ltd.*, 139 A.D.3d 639, 639 (N.Y. App. Div. 2016)

1

2

(Implied covenant "may not be used to impose obligations that alter or add to the express terms of

the parties' agreements."). In addition, the implied covenant "does not create duties which are not

3

fairly inferable from the express terms of the contract." *Nasdaq, Inc. v. Exch. Traded Managers*

4

*Grp., LLC*, No. 17 CIV. 8252 (PAE), 2019 WL 6977393, at *56 (S.D.N.Y. Dec. 20, 2019). Nor

5

does it imply any obligation[]… that 'would be inconsistent with other terms of the contractual

6

relationship.'" *Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389 (1995). Importantly here,

7

the implied covenant does not impose restrictions on provisions that on their face allow the exercise

8

of discretion. *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 334 (S.D.N.Y. 2010) (citing

9

cases); *Paxi, LLC v. Shiseido Americas Corp.*, 636 F. Supp. 2d 275, 286 (S.D.N.Y. 2009) (same).

10

AAFPAC's newly-minted contract claim must be rejected out of hand because it rewrites the

11

parties' contract. The agreement vests blanket authority and discretion in Clear Channel to remove

12

an advertisement "for any reason or no reason at any time during the term of this Contract."

13

AAFPAC cannot use the implied covenant to effectively nullify this term. *See Nasdaq, Inc.*, 2019

14

WL 6977393, at *56; *see also Murphy v. Am. Home Prod. Corp.*, 58 N.Y.2d 293, 304–05 (1983) (no

15

implied obligation of good faith and fair dealing because it "would be incongruous to say that an

16

inference may be drawn that the employer impliedly agreed to a provision which would be

17

destructive of his right of termination" where contract provided employer with "unfettered right to

18

terminate the employment at any time.").

19

AAFPAC's reliance on *Dalton v. Educ. Testing Service*, 87 N.Y.2d 384, 387 (1995), is

20

misplaced. *See* MTD Opp. at 23–24. There, the agreement between the standardized testing firm

21

and a test taker gave the former the "right to cancel any test score … if [the firm] believes that there

22

was reason to question the score's validity" and if such validity were questioned, the firm must

23

consider any relevant material supplied by the test taker to challenge the decision. *Dalton*, 87

24

N.Y.2d at 387. The court found the firm "failed to comply in good faith with its own test security

25

procedures" when it declined to consider relevant materials submitted by the test-taker as required

26

by the contract. *Id.* at 393. In other words, defendants failed to satisfy a predicate requirement in

27

the contract in good faith. Here, in contrast, the contract granted Clear Channel the right to remove a

28

billboard without precondition. And AAFPAC agreed to the contract and this term. The contract

8

did not obligate Clear Channel to follow additional procedures to justify its reasons for removal, and Clear Channel did not violate any duty of good faith and fair dealing in exercising its rights under the contract.  *See City of New York v. Stapleton Studios, LLC*, 798 N.Y.S.2d 343 (Table) (Civ. Ct. 2004) (finding party "acted within its rights" where provision allowed termination of permit "for any reason or no reason at any time.").

Because Clear Channel acted well within the contractual terms, Plaintiff's breach of contract claim should be dismissed.

## III.   AAFPAC'S BREACH OF CONTRACT CLAIM SHOULD BE STRICKEN UNDER THE ANTI-SLAPP STATUTE

Finally, Plaintiff AAFPAC's contract claim should be stricken under California's Anti-SLAPP statute.  As Plaintiffs agreed, there is a two-step process to determining whether an action should be stricken pursuant to Anti-SLAPP: (1) a prima facie showing must be made that Plaintiffs' suit arises in furtherance of Clear Channel's right of free speech; and (2) Plaintiffs must demonstrate a probability of prevailing on the claim.  Plaintiffs do not dispute the first element, *see* MTS Opp. at 7, and do not meet the second element.  For the reasons discussed *infra*, Plaintiff AAFPAC has no probability of prevailing in its breach claim because Clear Channel acted within the terms of the contract.  Thus, under the Anti-SLAPP analysis, AAFPAC's breach claim should be stricken.

## CONCLUSION

For the foregoing reasons, as well as those stated in Defendants' Motion to Dismiss, the Court should dismiss Plaintiffs' Amended Complaint with prejudice, or, in the alternative, strike the Breach of Contract claim pursuant to California's Anti-SLAPP statute.

Dated:  April 22, 2020                           SIDLEY AUSTIN LLP

                                                 By:    */s/ Brian J. Stretch*
                                                        Brian J. Stretch, SBN 211350
                                                        bstretch@sidley.com
                                                        Sidley Austin LLP
                                                        555 California Street, Suite 2000
                                                        San Francisco, CA  94104
                                                        Telephone: +1 415 772 1200
                                                        Facsimile: +1 415 772 7400

                                                        Gordon D. Todd (*pro hac vice*)
                                                        gtodd@sidley.com
                                                        David W. McAloon (*pro hac vice*)
                                                        dmcaloon@sidley.com
                                                        Katy (Yin Yee) Ho (*pro hac vice*)
                                                        katy.ho@sidley.com
                                                        SIDLEY AUSTIN LLP
                                                        1501 K Street, N.W.
                                                        Washington, DC 20005
                                                        Telephone:  (202) 736-8000
                                                        Facsimile:  (202) 736-8711

                                                        *Attorneys for Defendants*
                                                        *Clear Channel Outdoor, LLC;*
                                                        *Clear Channel Outdoor Holdings, Inc.*

CLEAR CHANNEL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:19-CV-07269-WHO