UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN LEE ZHOU, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>OUTFRONT MEDIA, et al.,<br><br>  Defendants. | Case No. 3:19-cv-07269-WHO<br><br>**ORDER GRANTING BREED'S MOTIONS TO DISMISS AND STRIKE AND CLEAR CHANNEL'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 25, 28, 32 |

In October 2019, plaintiffs Ellen Lee Zhou and the Asian American Freedom Political Action Committee ("AAFPAC") (collectively, "plaintiffs") posted two billboard advertisements in support of Zhou's campaign for mayor of the City and County of San Francisco. Defendant London Breed, then the mayor and a candidate in the race, denounced the billboards as disrespectful and divisive, and her supporters called for their removal. Defendant media companies Clear Channel Outdoor, LLC and Clear Channel Outdoor Holdings, Inc. (collectively, "Clear Channel") and OutFront Media, Inc. soon removed the billboards.

The following month, Zhou and AAFPAC initiated this action alleging claims arising out of their First Amendment free speech rights and their contracts with the media companies. Before me are Breed's and Clear Channel's motions to dismiss and special motions to strike the claims against them. The plaintiffs' claims are inadequately pleaded, arise from protected activity, and are unlikely to succeed on the merits. I will therefore grant the motions in their entirety and award Breed her attorney fees on the Anti-SLAPP motion. Because the plaintiffs indicated at the virtual hearing that they do not have additional facts to allege that could cure the deficiencies that I have

identified, I will not grant leave to amend.[1]

## BACKGROUND

Zhou was a candidate for mayor of San Francisco running against Breed in the November 2019 election. First Amended Complaint ("FAC") [Dkt. No. 10] ¶¶ 13, 18. AAFPAC is an independent expenditure committee. *Id.* ¶ 14.

On October 1, 2019, Zhou entered into a contract with OutFront to purchase a billboard advertisement to be displayed in San Francisco at the corner of Dore and Howard Streets. *Id.* ¶ 20, Ex. A (OutFront Contract). OutFront approved the advertisement, which displayed an African American woman in a red strapless dress, sitting with her legs up and high heels off, holding a cigar and a cash register, and daydreaming about people with numbers around their necks. *Id.* ¶ 24; Breed Request for Judicial Notice (RJN)[2] Ex. A (OutFront Billboard) [Dkt. No. 26-1]. The text read, "Ellen Zhou for mayor." Breed RJN Ex. A.

On September 30, 2019, AAFPAC entered into a contract with Clear Channel to purchase billboard advertisements to be displayed in San Francisco. FAC ¶ 22, Ex. B; Clear Channel RJN Ex. 1 (CC Contract) [Dkt. No. 32-2].[3] Clear Channel approved the advertisements AAFPAC wished to display. FAC ¶ 24. One of AAFPAC's billboards showed Breed driving a red bus with the text "Werewolves of London Tours" near cars with smashed windows. Breed RJN Ex. B (CC Billboard) [Dkt. No. 26-2]. Additional text read, "Vote Nov. 5 for Super Mayor Ellen Lee Zhou!" *Id.*

---

[1] The plaintiffs indicated that they would amend only to make specific allegations regarding the duty of good faith and fair dealing and to plead that the proof is in the defendants' hands. As described below, neither of these additions could save their claims.

[2] Breed requests judicial notice of photographs of the advertisements, *see* Dkt. No. 26, and Clear Channel requests judicial notice of its complete contract with AAFPAC, *see* Dkt. No. 32-2. The plaintiffs do oppose these requests. Judicial notice is appropriate; the requests are GRANTED. *See United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (noting that courts can consider evidence not attached to a complaint but "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document").

[3] Clear Channel asserts, and the plaintiffs do not dispute, that the FAC attachment includes only one page of its three-page contract with AAFPAC. Clear Channel's request for judicial notice includes the entire contract.

Clear Channel and OutFront posted the billboards in October 2019. FAC ¶ 25. Soon after, Breed and her allies "began a concerted effort" to pressure Clear Channel and OutFront to remove the billboards by denouncing them as offensive, racist, and divisive. *Id.* ¶ 26. Breed's campaign publicized an October 21, 2019 press conference in front of the OutFront billboard, although Breed did not attend it. *Id.* ¶¶ 27–28. Those present, including State Assemblyman David Chiu and members of the Board of Supervisors, denounced the content of the billboard and called for its removal. *Id.* ¶¶ 29–31. News outlets reported various individuals describing the contents of the billboard as racist, misogynistic, and sexist, and opining that it had no place in San Francisco. *Id.* ¶¶ 31–35. Breed gave a media interview in which she said, "'[The billboard] is hurtful, it's disrespectful and it is no place [sic], I think in San Francisco for that kind of divisiveness.'" *Id.* ¶ 36.

According to the plaintiffs, through these actions Breed censored their speech under color of state law. *Id.* ¶ 37. On October 22, 2019, one day after the press conference, OutFront took down Zhou's billboard. *Id.* ¶ 38. Soon after, Clear Channel and OutFront had taken down all the plaintiffs' billboards. *Id.* Clear Channel told a television station that it removed the billboards because it reserves the right to remove advertising that is offensive to community standards. *Id.* ¶ 39. Although Clear Channel and OutFront indicated that they would accept further advertisements, they eventually stopped responding to the plaintiffs' communications. *Id.* ¶ 40.

The plaintiffs initiated this action on November 4, 2019. Their January 15, 2020 First Amended Complaint alleges the following claims: (i) a Section 1983[4] claim against all the defendants for violations of the First Amendment; (ii) a breach of contract claim against Clear Channel and OutFront; (iii) inducing breach of contract against Breed; and (iv) intentional interference with contractual relations against Breed. In response, Breed filed a motion to dismiss and a special motion to strike. Breed Motion to Dismiss the First Cause of Action ("Breed MTD") [Dkt. No. 25]; Breed Anti-SLAPP Motion to Strike ("Breed MTS") [Dkt. No. 28]. Clear Channel also filed a motion to dismiss, and, in the alternative, a special motion to strike. Clear Channel

---

[4] The FAC lists Section 1982, but the plaintiffs' opposition to the instant motions corrects the error and lists Section 1983.

3

1  Motion to Dismiss ("CC MTD") [Dkt. No. 32].

**LEGAL STANDARD**

**I.  MOTION TO DISMISS**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**II.  ANTI-SLAPP MOTION TO STRIKE**

California Code of Civil Procedure section 425.16 is California's response to "strategic lawsuits against public participation," or SLAPP lawsuits. It was enacted "to provide a procedure for expeditiously resolving nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue." *Hansen v. California Dep't of Corr. & Rehab.*, 171 Cal. App. 4th 1537, 1542-43 (2008). It provides that a cause of action against a person "arising from any act of that person in furtherance of the person's

4

right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). An "act in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
>
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or
>
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

"When served with a SLAPP suit, the defendant may immediately move to strike the complaint under Section 425.16." *Hansen*, 171 Cal. App. 4th at 1543. That motion is known as an Anti-SLAPP motion. To determine whether an Anti-SLAPP motion should be granted, the trial court must engage in a two-step process. "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation and internal quotation marks omitted). "Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.* "[T]he anti-SLAPP statute cannot be used to strike federal causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

## DISCUSSION

Both Breed and Clear Channel argue that all of the plaintiffs' claims against them should

be dismissed without leave to amend or stricken under California's Anti-SLAPP statute.[5]

## I.  MOTIONS TO DISMISS

Breed and Clear Channel move to dismiss the first cause of action for violation of the First Amendment, and Clear Channel moves to dismiss the second cause of action for breach of contract.

### A.  First Cause of Action:  First Amendment

Both Breed and Clear Channel move to dismiss on the grounds that the FAC does not adequately plead state action, a necessary predicate to a First Amendment violation.[6]  *See* Breed MTD 8–10; CC MTD 5–9.  Breed also argues that her conduct as alleged in the FAC cannot give rise to a First Amendment violation because the First Amendment protects her speech.  Breed MTD 5–7.

#### 1.  Whether plaintiffs properly plead state action

"A threshold requirement of any constitutional claim is the presence of state action." *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 837 (9th Cir. 2017) (internal quotation marks and citation omitted).  This requirement "'avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.'"  *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)).  There is a presumption that private conduct is not state action.  *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835–36 (9th Cir. 1999) (noting that "something more" is required, whether it be "(1) public function, (2) joint action, (3) governmental compulsion or coercion, [or] (4) governmental nexus").

Plaintiffs allege two theories of state action in support of their first cause of action.  First, they argue that Breed and her allies "pressured and encouraged" Clear Channel and OutFront

---

[5] As an initial matter, the plaintiffs criticize Breed for responding to the FAC in her official capacity rather than her individual capacity and ask that I deny her motions on that basis alone. Oppo. MTD 24–25; Oppo. MTS 26.  The FAC does not indicate an intent to sue Breed in her personal capacity, and in any event, the capacity in which the plaintiffs sue Breed has no bearing on the merits of the motions before me.

[6] At the hearing, Clear Channel further argued that the plaintiffs failed to plead that Breed took any action under color of state law for purposes of a Section 1983 claim because she acted as a candidate for mayor rather than as the mayor.

6

Media to suppress Plaintiffs' speech. Oppo. MTD 8. Second, they allege that Clear Channel and OutFront acted to secure the goodwill of the government because they are subject to government regulation.

### a. Significant encouragement theory

"[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

In *R.C. Maxwell Co. v. New Hope*, 735 F.2d 85 (3d Cir. 1984), the Third Circuit affirmed summary judgment in favor of a town on the grounds that a landlord's request that the plaintiff remove billboards from the leased property did not constitute state action for purposes of a First Amendment claim. The town sent a letter to the plaintiff's landlord "politely but firmly" suggesting removal of the billboards, mentioning a draft ordinance that would prohibit billboards, and referencing legal action. *Id.* at 86. When the landlord instructed the plaintiff company to remove the billboards, it refused and instead filed suit, alleging (among other claims) that the town infringed its free speech rights by "by indirectly and informally exerting its sovereign power" to coerce the landlord into removing the billboards. *Id.* at 87. The Third Circuit disagreed and concluded that the letter and follow-up correspondence could not be considered coercive. *Id.* at 88. The landlord's "nebulous desire" to stay in the town council's good graces was not enough to give rise to a constitutional claim. *Id.* at 89.

Here, the plaintiffs argue that Clear Channel's and OutFront's decisions to remove the billboards are attributable to the state because of Breed's significant encouragement of their removal. The plaintiffs allege that Breed's campaign publicized the October 21 press conference, where Breed's allies in city government described the contents of the billboards as racist and misogynistic and called for their removal. FAC ¶¶ 29, 32, 35. Breed said that the billboards were "hurtful" and "disrespectful" and that they had no place in San Francisco. *Id.* ¶ 36.

These allegations are insufficient to show state action for purposes of a First Amendment

7

claim against either Breed or Clear Channel. They do not show that Breed provided "such significant encouragement" that the companies' decisions were effectively government decisions. There are no allegations that any comments, by Breed or anyone else, were directed at Clear Channel or OutFront. No one threatened legal action or any other negative ramifications to encourage removal of the billboards. The conduct in the cases cited by the parties stands in sharp contrast. *See, e.g.*, *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1295 (9th Cir. 1987) (affirming state action where a deputy county attorney threatened prosecution if a private party failed to comply with his demands). The conduct alleged here is far from enough to be considered coercive or so significantly encouraging that the billboard removal could be attributed to the state.[7]

### b. Regulation theory

The FAC also pleads that Clear Channel and OutFront have earned revenue from conducting business in San Francisco and that their "business interests are subject to extensive regulation by San Francisco and the State of California." FAC ¶¶ 42-43. But the Supreme Court has been clear that regulation by itself—even where it is extensive and specific—does not transform private action into state action. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) (noting that regulation alone is not enough); *Blum v. Yaretsky*, 457 U.S. 991, 1008–09 (1982) (determining that regulations requiring that nursing home patients be transferred to less expensive facilities where possible did not make the state responsible for any particular patient transfers); *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) (noting that while the private school was subject to extensive regulation, its discharge decisions "were not compelled or even influenced by any state regulation"). The generally applicable regulations that plaintiffs refer to are a far cry from allegations that could establish that the decisions to take down the billboards were effectively the state's.

---

[7] Even if the plaintiffs had alleged enough to make Breed liable for Clear Channel's or OutFront's decisions, they would need to allege "some other nexus" to make the private entities liable under the First Amendment. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838 (9th Cir. 1999) ("[I]n a case involving a private defendant, the mere fact that the government compelled a result does not suggest that the government's action is 'fairly attributable' to the private defendant.").

8

Contrary to the plaintiffs' argument, this determination is appropriate at the pleading stage. *See* Oppo. MTD 9 (arguing that Breed and Clear Channel place too high a burden on them at the pleading stage and noting that *R.C. Maxwell* was a ruling on summary judgment). For plaintiffs to proceed with their claims, they must plead facts that, taken as true, could establish that the defendants engaged in unconstitutional conduct. They have failed to do so.

### 2. Whether Breed's conduct is actionable

Dismissal is also appropriate because Breed's speech could not have amounted to a First Amendment violation. "[P]ublic officials may criticize practices that they would have no constitutional ability to regulate, so long as there is no actual or threatened imposition of government power or sanction." *Am. Family Ass'n v. City & Cty. of S.F.*, 277 F.3d 1114, 1124–25 (9th Cir. 2002) (indicating agreement with and citing cases from a "host" of other circuits).

In *American Family*, where city officials had criticized anti-gay speech and adopted resolutions urging television stations not to air it, the Ninth Circuit affirmed dismissal of a free speech claim because there was "no sanction or threat of sanction" against the speakers or the stations if they refused to comply. *See id.* The same is true of Breed's response to the billboards, which itself was significantly less critical than the condemnation at issue in *American Family*. *See id.* at 1119–20. The plaintiffs do not allege that Breed's critical and disapproving comments were accompanied by any threat of government power or sanction against them or Clear Channel and OutFront. Their attempts to distinguish *American Family* are unpersuasive. *See* Oppo. MTD 16 (asserting that by contrast with *American Family*, their claims are based on "specific and tangible actions").

### B. Second Cause of Action: Breach of Contract

Clear Channel moves to dismiss the breach of contract claim on the ground that it acted within the unambiguous terms of its agreement with AAFPAC[8] when it took down its billboard advertisement. CC MTD 9–11. The contract is governed by New York law. RJN Ex. 1 ¶ 8(a). To state a claim for breach of contract under New York law, a plaintiff must allege: "(i) the

---

[8] Although the FAC does not specify that only AAFPAC brings second cause of action, it indicates that only AAFPAC entered into a contract with Clear Channel. *See* FAC ¶ 22.

existence of a contract, (ii) the plaintiff's performance under the contract, (iii) the defendant's breach of that contract, and (iv) resulting damages. *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 893 N.Y.S.2d 237, 239 (App. Div. 2nd Dept.).

AAFPAC alleges that Clear Channel violated the contract when it removed the billboard because of government pressure and never explained the reversal of its earlier approval of the advertisement. *See* FAC ¶¶ 38, 41. It contends that Clear Channel "failed to follow through" on assurances that they would accept further advertisements and instead stopped communicating with AAFPAC. *Id.* ¶ 40.

These allegations are insufficient to state a claim for breach because of the following term in the parties' agreement: "Clear Channel, at its sole discretion, may reject or remove any advertising material, art or copy, submitted by Customer for any reason or no reason at any time during the term of this Contract." CC Contract ¶ 3.2(a). This unambiguous term precludes a breach of contract claim based on the conduct alleged. *See Taylor v. T-Mobile USA, Inc.*, No. 14-cv-4965, 2015 U.S. Dist. LEXIS 5504, at *7 (S.D.N.Y. Jan. 16, 2015) (dismissing a breach of contract claim where a clear and unambiguous provision permitted cancellation "'for any reason or no reason'"); *see also Slamow v. Delcol*, 571 N.Y.S.2d 335, 335–36 (App. Div. 2nd Dept. 1991) ("[W]hen the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract . . . ."). The contract clearly permitted it to remove the advertisement "for any reason or no reason."

In response to Clear Channel's motion, AAFPAC raises a theory that its FAC does not include: by removing the advertising, Clear Channel breached the covenant of good faith and fair dealing. *See* MTD Oppo. 22–23. They ask for leave to amend to add these allegations. MTD Oppo. 16–17. But dismissal is appropriate even if AAFPAC had pleaded this claim. The covenant of good faith and fair dealing cannot operate to alter the express terms of a written agreement. *See Nasdaq, Inc. v. Exch. Traded Managers Grp.*, 2019 U.S. Dist. LEXIS 220135, at *179 (S.D.N.Y. Dec. 20, 2019) ("[T]he covenant of good faith and fair dealing cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights.") (applying New York Law) (internal quotation marks and citation

1  omitted); *see also Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995) ("[N]o obligation can
2  be implied that would be inconsistent with other terms of the contractual relationship.") (internal
3  quotation marks and citation omitted). The unambiguous contract language shows that Clear
4  Channel had the right to remove the billboard; doing so could not have been a breach.[9]

## II. ANTI-SLAPP MOTION TO STRIKE

Breed moves to strike the third and fourth causes of action under California's Anti-SLAPP law and requests attorney fees. Accordingly, I will engage in the two-step process such motions require.

At step one, the question is whether protected activity "underlies or forms the basis for the claim[s]" against Breed. *Park v. Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1062 (2017). Breed's conduct as alleged in the FAC clearly arises from protected speech; the plaintiffs do not argue otherwise. *See Citizens United v. FEC*, 558 U.S. 310, 339 (2010) ("The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office.") (internal quotation marks omitted); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) ("[Political speech] occupies the core of the protection afforded by the First Amendment.").

Accordingly, the analysis proceeds to step two, and the claims can proceed only if the plaintiffs show a likelihood of success on the merits. The third cause of action for inducing breach of contract requires: "(1) that [the plaintiff] had a valid and existing contract, (2) that the defendant had knowledge of the contract and intended to induce its breach, (3) that the contract was in fact breached by the other contracting party, (4) that the breach was caused by the defendant's unjustified and wrongful conduct, and (5) that plaintiff has suffered damage." *Charles C. Chapman Bldg. Co. v. Cal. Mart*, 2 Cal. App. 3d 846, 853 (1969). The fourth cause of action for intentional interference with contractual relations requires: "a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed

---

[9] In the alternative to its motion to dismiss, Clear Channel moves to strike the second cause of action under California's Anti-SLAPP statute. Because dismissal is appropriate under Rule 12(b)(6), I do not address this argument.

to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *United Nat'l Maint., Inc. v. San Diego Convention Ctr.*, 766 F.3d 1002, 1006 (9th Cir. 2014).

The plaintiffs' allegations fail to state a claim for either cause of action. They are deficient in three respects. First, both causes of action require a showing of "wrongful and unjustified" conduct. The plaintiffs argue that Breed's conduct was wrongful and unjustified because it violated their First Amendment rights. Oppo. MTS 17–18. But for the reasons stated above, the plaintiffs have failed to plausibly allege that the removal of the billboards can fairly be attributed to the state. Second, both causes of action require a showing of breach. As explained above, the plaintiffs have failed to adequately plead that Clear Channel breached its contracts with AAFPAC, and according to Zhou, the "same analysis" applies to her contract with OutFront, who has not appeared.[10] MTD Oppo. 15–16. Third, plaintiffs fail to allege that Breed knew of the contracts and had any intent to breach them. All of these reasons make it appropriate to strike these claims, which arise from Breed's protected political speech.

Further, Breed is entitled to attorney fees for work related to the claims I have stricken. *See* Cal. Code Civ. Proc. § 415.16(c)(1)) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999) (applying the provision to state claims brought in federal court). She requests a total of $22,200, for 34.4 hours spent on the motion and 10 hours spent on the reply at a rate of $500.[11] *See* Declarations of Tara M. Steeley [Dkt. Nos. 29, 41]. The plaintiffs have not opposed Breed's request for fees or challenged these

---

[10] That contract is governed by Arizona law. FAC Ex. A § 7. The plaintiffs again raise a theory of breach not alleged in the FAC, namely breach of the covenant of good faith and fair dealing. Breed argues that the following term from the OutFront contract operates in the same way as the term in the Clear Channel contract analyzed above: "[I]f adverse publicity results from any display, [OutFront] shall have the right to remove advertisement and, at its option, either terminate this Contract or request a new acceptable advertisement copy . . . ." *Id.* § 6. That determination will await OutFront's appearance and motion. For purposes of Breed's Anti-SLAPP motion, the pleading insufficiencies outlined here are enough.

[11] Breed's request reflects a 20% reduction of hours spent on the opening motion and does not seek compensation for time spent by attorneys other than Steeley.

hours or this rate, both of which I find reasonable.

## CONCLUSION

Because the plaintiffs stated at the hearing that they have no additional facts to allege that could cure these deficiencies, the motions are GRANTED WITH PREJUDICE. The plaintiffs are ORDERED to pay Breed $22,200 in attorney fees. Judgment will be entered after final resolution of the claims against OutFront.

**IT IS SO ORDERED.**

Dated: May 26, 2020

William H. Orrick
United States District Judge